UNITED STATES of America, Plaintiff,

v.

UNION GAS COMPANY, et al., Defendants,

v.

COMMONWEALTH of PENNSYLVANIA,

and

the Borough of Stroudsburg, Third Party Defendants.

Civ. A. No. 83–2456.

United States District Court, E.D. Pennsylvania.

July 3, 1990.

Michael M. Baylson, U.S. Atty., James G. Sheehan, Asst. U.S. Atty., Joseph J.C. Donovan, U.S.E.P.A., Philadelphia, Pa., for plaintiff.

David H. Marion, Robert A. Swift, Philadelphia, Pa., Lawrence A. Demase, Pittsburgh, Pa., C. Gary Wynkoop, Benjamin G. Stonelake, Jr., Francis X. Crowley, Philadelphia, Pa., Ralph A. Metergia, Stroudsburg, Pa., for defendant.

## MEMORANDUM AND ORDER

BECHTLE, Chief Judge.

Presently before the court is a matter arising out of a third party suit for contribution pursuant to § 113(f) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.* brought by Union Gas Company ("Union Gas") against the Commonwealth of Pennsylvania ("Commonwealth"). This action has leap-frogged through the federal court system, and is here on remand from the decision by the United States Supreme Court in *Pennsylvania v. Union Gas Company,* —— U.S. ——, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989). Union Gas has filed a motion to dismiss the five-count counterclaim filed by the Commonwealth and a motion to strike five of the thirteen affirmative defenses raised by the Commonwealth. For the reasons discussed below, the motion to dismiss the counterclaim will be granted in part and denied in part and the motion to strike will be granted in part and denied in part.

## FACTUAL BACKGROUND

A brief examination of the factual background and procedural course of this litigation will follow.

### I. *United States v. Union Gas and Procedural History of Third Party Claim*

From 1890 to 1948, predecessors of Union Gas Company owned and operated a carburetted water gas plant near Brodhead Creek in Stroudsburg, Pennsylvania, after which time the plant was dismantled. In 1953 and 1970, Union Gas sold part of its land near the creek to Pennsylvania Power and Light Co., which then granted easements over the land to the Borough of Stroudsburg ("the Borough"). In 1955, as a result of flooding, the Commonwealth and the Borough, in conjunction with the Army Corps of Engineers, dug levees, erected dikes, narrowed and deepened the creek and redirected its flow. In early 1980, the Borough assigned its easements to the state. On October 7, 1980, the Commonwealth was excavating at Brodhead Creek when it struck a large deposit of coal tar that began to seep into the water.[1] The Environmental Protection Agency ("EPA") found that this coal tar was a hazardous substance and ordered clean up of the site. The Commonwealth and the federal government jointly performed the work necessary to clean up the tar that had seeped into the water. The federal government reimbursed the Commonwealth for all

---

1. In its answer to the second amended third party complaint, the Commonwealth denies that the flood control project caused or contributed to the coal tar release. The relative liability of the Commonwealth and Union Gas is the subject of the third party suit presently before this suit.

its costs, expending approximately $720,-000.

In 1983 the United States of America brought suit in this court against Union Gas under the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA" or "the Act"), 42 U.S.C. § 9604 and 9607 for reimbursement of $450,000 of the costs incurred in the clean-up of Brodhead Creek. The United States claimed that because the coal tar had been deposited into the ground near Brodhead Creek by Union Gas and its predecessors as a by-product of their carburetted water gas processing, the company was consequently liable for the clean up costs. Union Gas denied any liability and filed a third party complaint under CERCLA against the Commonwealth and the Borough of Stroudsburg, alleging that the third party defendants are owners and operators of the facility, and had "negligently caused, or contributed to, the discharge of coal tar into Brodhead Creek" by their recent excavation and earlier construction of dikes and levees, and therefore that they should pay for the cleanup.

On November 15, 1983, this court granted the motion to dismiss filed by the third party defendants on the grounds that the eleventh amendment barred the suit against the Commonwealth. *United States v. Union Gas Co.*, 575 F.Supp. 949 (E.D.Pa.1983). At that time, before the enactment of amendments specifically stating that States' can be sued for damages under CERCLA, the court was unable to find in CERCLA the requisite clear language indicating that Congress intended to abrogate States' immunity.

Shortly thereafter, the United States filed an amended complaint against Union Gas, revising the damage figures and alleging that $720,000 of the $1,400,000 spent by the United States was collectible from Union Gas under CERCLA.

This court was next presented with a motion for summary judgment filed by Union Gas, in which the company argued that the coal tar constituents at issue in this case are not hazardous substances within the meaning of CERCLA. On May 30, 1984, this court denied the motion, holding that acenaphthene, ethylvenzene, flouranthene, phenanthrene, pyrne, napthalene and xylene, are hazardous substances under CERCLA, by reason of CERCLA'S definition section, 42 U.S.C. § 9601(14)(A) and (D). *See United States v. Union Gas Co.*, 586 F.Supp. 1522 (E.D.Pa.1984).

Union Gas then filed an amended third party claim against the Commonwealth and Borough. The state again moved to dismiss, and on September 13, 1984, this court granted the motion on eleventh amendment grounds for the reasons set forth in 575 F.Supp. 949.

Several months later, on February 4, 1985, this court dismissed the federal government's action against Union Gas pursuant to Rule 23(b) of the Local Rules of Civil Procedure of the Eastern District of Pennsylvania, based on its understanding that the United States and Union Gas had reached a settlement.[2] Union Gas then appealed this court's granting of the Commonwealth's motion to dismiss Union Gas's third party complaint. On appeal, the United States Court of Appeals for the Third Circuit affirmed this court's ruling, holding that CERCLA did not evince congressional intent to abrogate the states' eleventh amendment immunity. *See United States v. Union Gas Co.*, 792 F.2d 372 (3d Cir.1986). (*Union Gas I*). Following the *Union Gas I* ruling, Congress enacted the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), Pub.L. 99–499. The United States Supreme Court vacated and remanded the case for further consideration by the Third Circuit in light of the enactment of SARA. *Union Gas*

---

**2.** Under the consent decree, Union Gas agreed to pay the United States $700,000 as reimbursement for expenses incurred by the United States in connection with the alleged discharge, release and threatened release of oil and hazardous substances into the environment in Strouds-

burg, Pennsylvania. In exchange for this payment, the United States agreed to release Union Gas from all liability for the United States' expenditures made on or before January 24, 1985, in connection with such discharge.

*Co. v. Pennsylvania,* 479 U.S. 1025, 107 S.Ct. 865, 93 L.Ed.2d 821 (1987).

On remand, the Third Circuit reversed the district court's judgment, and concluded that, in contrast to the legislative language of CERCLA upon which the court based its decision in *Union Gas I,* SARA provided CERCLA with the requisite unmistakably clear language needed to abrogate the States' eleventh amendment immunity. The court further held that in enacting SARA pursuant to its Article I commerce clause powers (as opposed to its Fourteenth amendment power), Congress possessed the constitutional power to abrogate the states' sovereign immunity. *See United States v. Union Gas Co.,* 832 F.2d 1343 (3d Cir.1987) (*Union Gas II*). On writ of certiorari, the United States Supreme Court affirmed the Third Circuit's opinion in *Union Gas II,* holding that the language of CERCLA as amended by SARA clearly evinces an intent to hold States liable for damages in federal court and that Congress has the authority to render States so liable when legislating pursuant to the Commerce Clause.

## II. *Third Party Claim*

The Supreme Court of the United States having laid to rest the issue of sovereign immunity and having remanded the case, this court now has before it the merits of the underlying third party claim. After the ruling by the Supreme Court, on December 29, 1989, Union Gas filed a second amended and supplemental third party claim ("third party complaint") for contribution. Although the allegations in the third party complaint parallel the facts discussed above, some of them bear repeating. Union Gas alleges that between 1960 and 1962 the Commonwealth directed and paid for the relocation and narrowing of Brodhead Creek and the construction of dikes adjacent to the site where the coal gasification plant had operated. Union Gas further alleges that the Borough of Stroudsburg obtained a permanent easement over the lands adjoining the creek and in 1980 conveyed title to the Commonwealth, which already owned the stream bed. By 1980, Union Gas claims that the stream bed had steadily eroded and dropped by ten feet as a result of the narrowing and containment of the creek, and that the Commonwealth failed to take necessary corrective action to prevent the seepage of coal tar into the environment.

In Count I of the third party complaint Union Gas alleges that the Commonwealth is an owner and operator within the meaning of CERCLA, and caused the alleged release and discharge of coal tar into the creek by its acts and omissions and/or negligence, including, *inter alia,* (a) relocating the stream closer to the site of the former coal gasification plant; (b) narrowing the channel of Brodhead Creek and constructing the channel with dikes; (c) failing to maintain the integrity of the toe of the dike; and (d) excavating along the toe of the dike and releasing coal tar. In Count I, Union Gas seeks to recoup pursuant to 42 U.S.C. § 9607(a) and § 9613(f) from the Commonwealth $700,000 it paid to the United States on August 5, 1989 in settlement of the claims alleged in the amended complaint and $300,000 it expended to perform a remedial investigation and feasibility study (RI/FS) required by the state. In Count II, Union Gas claims that the Commonwealth is liable to Union Gas, as subrogee of the United States pursuant to 42 U.S.C. § 9612(c)(2), to the extent of $700,000 of the total cleanup costs incurred.

The Commonwealth filed an answer and counterclaim to the third party complaint on January 22, 1990, and a first amended answer and counter claim on March 2, 1990. In the answer, the Commonwealth denied that the flood control project caused or contributed to the coal tar release and raised thirteen affirmative defenses, several of which Union Gas has moved to strike. These are essentially as follows: (1) Union Gas's claim against the Commonwealth is barred by sovereign immunity. 1 Pa.C.S. § 2310 (third affirmative defense); (2) Union Gas's claim is barred by its duties under the Clean Streams Law ("CSL"), 35 P.S. § 691.1 *et seq.,* and the Pennsylvania Hazardous Sites Cleanup Act, 35 P.S. § 6020.101 *et seq.,* and the Pennsylvania Solid Waste Management Act ("SWMA"),

35 P.S. § 6018.101 *et seq.*, or in the alternative, Union Gas is liable to the Commonwealth, or is solely liable or must indemnify the Commonwealth by operation of these statutes (fourth affirmative defense); (3) Union Gas's claims are barred by the eleventh amendment to the extent they are based on state law (fifth affirmative defense); (4) Union Gas's claim is barred by the doctrine of unclean hands (seventh affirmative defense); and (5) the doctrine of unclean hands bars Union Gas from recovering any contribution or damages from the Commonwealth (eighth affirmative defense).

The Commonwealth also filed a five count counterclaim in response to the third party complaint. In Count I of the counterclaim, the Commonwealth alleges that Union Gas and its predecessors disposed of, continues to dispose of and has failed to remove coal tar in violation of the SWMA. The Commonwealth asks the court, *inter alia*, to: declare Union Gas to be in violation of the SWMA; order Union Gas to abate the nuisance at the site; assess against Union Gas the Commonwealth's costs of abatement and enter judgment in that amount in favor of the Commonwealth. The Commonwealth also asks the court to do the following:

> "(f) in the event that this Court orders the Commonwealth to contribute to Union Gas Company all or portion of monies spent by Union Gas Company as a result of CERCLA enforcement, enter judgment for the Commonwealth for that same amount, together with attorneys' fees, interest and costs for the aforesaid violation of Pennsylvania's environmental laws ..."

Count II alleges that Union Gas has contaminated and continues to contaminate the groundwater and soil at the site and adjacent areas, as well as the water in Brodhead Creek, in violation of the SWMA. The Commonwealth claims that Union Gas is liable under 35 P.S. § 6018.401 for harm caused by it and its predecessors' disposal of coal tar. The Commonwealth asks the court, *inter alia*, to order Union Gas to remove the coal tar and all affected soil from the site and treat the ground and surface water; assess the harm suffered by the waters of the Commonwealth and enter judgment in favor of the Commonwealth in the amount necessary to compensate the Commonwealth for that harm, together with the costs of assessing the damages caused to the Commonwealth's resources. Count II also included a clause identical to section (f), *supra*.

In Count III, the Commonwealth claims that Union Gas and its predecessors deposited coal tar into the ground at the site during the years they operated the coal gasification plant and continues to discharge industrial waste into the waters of the Commonwealth in violation of the Pennsylvania Clean Streams Law ("CSL"), 35 P.S. § 691.1 *et seq.* The Commonwealth further claims that Union Gas is responsible for the costs of abatement of this nuisance. The Commonwealth asks the court, *inter alia*, to declare Union Gas to be in violation of the CSL; order Union Gas to abate the nuisance at the site; order Union Gas to comply with the CSL by removing the coal tar and correcting the conditions caused by the discharge of the coal tar; and assess against union Gas the Commonwealth's costs of abatement. Count III also contains a clause identical to section (f), *supra*.

Count IV alleges that Union Gas's having put or having allowed the discharge of polluting substances into the waters of the Commonwealth constitutes an abatable nuisance in violation of the CSL. The Commonwealth asks the court, *inter alia*, to order Union Gas to comply with the CSL and to assess against Union Gas and award the Commonwealth its costs of abatement of this nuisance. Count IV also contains a clause identical to section (f), *supra*.

Finally, Count V of the counterclaim asserts that Union Gas is an owner or operator of the stream bed of Brodhead Creek and adjacent lands, as defined by CERCLA, 42 U.S.C. § 9607(a). The Commonwealth claims that it continues to incur costs as defined by 42 U.S.C. § 9601(25) and authorized by 42 U.S.C. § 9604, in responding to the release of coal tar by Union Gas. The

Commonwealth further claims that Union Gas is liable to the Commonwealth pursuant to 42 U.S.C. § 9607(a) for all Commonwealth expenditures caused by this release.

## APPLICABLE LEGAL STANDARDS

### Motion to Dismiss

■ Union Gas has moved to dismiss the Commonwealth's counterclaim for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6). Rule 12(b)(6) instructs a court to dismiss an action for failure to state a cause of action only if it appears to a legal certainty that no relief could be granted under any set of facts that could be proved. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). Because granting such a motion results in a determination of the merits at an early stage of the plaintiff's case, the trial court "must take all well pleaded allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." *Colburn v. Upper Darby Township*, 838 F.2d 663, 665–66 (3d Cir. 1988), *cert. denied* — U.S. —, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989) (quoting *Estate of Bailey v. County of York*, 768 F.2d 503 (3d Cir.1985)).

The standard for dismissal of a counterclaim is the same as that for dismissal of a complaint. Thus, dismissal of the Commonwealth's counterclaim would only be proper if, taking all allegations in the counterclaim as true and viewing all reasonable inferences in the light most favorable to the Commonwealth, the court finds that the counterclaim could not prevail under any set of facts that could be proved.

### Motion to Strike

■ Union Gas has moved to strike the Commonwealth's third, fourth, fifth, seventh and eighth affirmative defenses pursuant to Fed.R.Civ.P. 12(f). Fed.R.Civ.P. 12(f) provides, in pertinent part:

> (f) Motion to Strike. Upon motion made by a party ... the court may order stricken from the pleading any insufficient defense.

Motions to strike are generally viewed with disfavor. *See American Standard Life & Accident Insurance Co. v. U.R.L., Inc.*, 701 F.Supp. 527, 531 (M.D.Pa.1988). If there are either questions of fact or disputed question of law, the motion to strike must be denied. For the plaintiff to succeed on this motion, the Court must be convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defenses succeed. *Smith, Kline & French Laboratories v. A.H. Robins Co.*, 61 F.R.D. 24, 33 (E.D.Pa. 1973), citing *Carter–Wallace, Inc. v. Riverton Laboratories, Inc.*, 47 F.R.D. 366 (S.D. N.Y.1969).

■ However, a motion to strike under Rule 12(f) is the "primary procedure" for objecting to an insufficient affirmative defense. 5 C. Wright and A. Miller, *Federal Practice and Procedure* § 1380 at 782 (1969). Thus, even though motions to strike are often viewed with disfavor because of their potential to be used as a dilatory tactic, they do serve a useful purpose by eliminating insufficient defenses and saving the time and expense which would otherwise be spent in litigating issues that would not affect the outcome of the case. *United States v. Geppert Bros., Inc.*, 638 F.Supp. 996, 998 (E.D.Pa.1986). In addition, the district court has broad discretion in disposing of motions to strike. *Smith, Kline & French*, 61 F.R.D. at 34.

## LEGAL DISCUSSION

In ruling on the motion to dismiss and motion to strike, this court must view the legal standards described above in the context of the overarching public policy expressed in CERCLA having to do with preserving and cleaning up our environment. Although some of the principles embodied in the legislative doctrine, which will be discussed more fully below, may be in conflict with a structured and logical approach to analyzing legal issues, the court is confident that the language of CERCLA, the intent of Congress in enacting statute, and the Supreme Court's interpretation of certain of its provisions, would envision the

result the court will reach in the matter before it and support its analysis.

Congress enacted CERCLA in 1980 as a legislative solution to the worsening problem of the disposal of toxic wastes and the ensuing contamination of our land and water resources. The statute is an attempt to deal with the related problems of the emergency abatement of releases of hazardous substances into the environment and the short- and long-term response to the presence of hazardous wastes in existing disposal sites. *See Dedham Water Co. v. Cumberland Farms Dairy*, 805 F.2d 1074, 1081 (1st Cir.1986); *Lone Pine Steering Comm. v. U.S. E.P.A.*, 777 F.2d 882, 886 (3d Cir.1985), *cert. denied*, 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986); *Artesian Water Co. v. Gov. of New Castle County*, 659 F.Supp. 1269, 1276 (D.Del. 1987).

Generally, CERCLA provides a financial scheme whereby the persons responsible for generating, handling, brokering and/or transporting hazardous materials ultimately may be held liable for treating or disposing of them. *See* 42 U.S.C. § 9607. CERCLA establishes a "superfund," which is financed primarily through excise tax revenues. The federal government is authorized to use the superfund to finance governmental response activities, to pay claims arising from the response activities of private parties, and to compensate federal or state governmental entities for damage caused to natural resources. *See Artesian Water*, 659 F.Supp. at 1277. The act contemplates a variety of scenarios regarding which party will organize, execute and finance cleanup. CERCLA also creates a thorough scheme for the resolution of the ultimate economic liability for the cost of cleanup. The federal government may attend to the cleanup and charge the expense to responsible parties. On the other hand, some or all responsible parties may attend to the cleanup directly. The parties may be liable directly to the government, or to each other. *See Central Illinois Public*

*Service Co. v. Industrial Oil Tank & Line Cleaning Service, et al.*, 730 F.Supp. 1498, 1502 (W.D.Mo.1990).

In 1986, Congress passed the Superfund Amendments and Reauthorization Act of 1986, P.L. 99–499, § 101 *et seq.*, 100 Stat. 1613 (1986) ("SARA"), amending CERCLA. Among other changes to CERCLA, SARA included several provisions addressing the questions of contribution and settlement of CERCLA claims. 42 U.S.C. § 9613(f). These sections of SARA are at issue in the matter before the court—Union Gas has brought this third party suit to obtain contribution from the Commonwealth pursuant to SARA's contribution provisions and has moved to dismiss the Commonwealth's counterclaims pursuant to SARA's settlement provisions.

Section 9613(f) provides:

**(1) Contribution**

Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title,[3] during or following any civil action under 9606 of this title or under section 9607(a) of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 or section 9607 of this title.

**(2) Settlement**

A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement. Such settlement does not discharge any of the other potentially liable persons unless its terms

---

**3.** Section 9607(a) governs who is liable for what costs, actions and damage under CERCLA. Section 9606 governs abatement actions on the part of the United States for actual or threatened release of a hazardous substance that may imminently and substantially endanger the public health or the environment.

so provide, but it reduces the potential liability of the others by the amount of the settlement.

**(3) Persons not party to settlement**

(A) If the United States or a State has obtained less than complete relief from a person who has resolved its liability to the United States or the State in an administrative or judicially approved settlement, the United States or the State may bring an action against any person who has not so resolved its liability.

(B) A person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement referred to in paragraph (2).

(C) In any action under this paragraph, the rights of any person who has resolved its liability to the United States or a State shall be subordinate to the rights of the United States or the State. Any contribution action brought under this paragraph shall be governed by Federal law.

These sections enable the Environmental Protection Agency ("EPA"), the federal agency charged with enforcing CERCLA, to obtain settlements. A district court in Massachusetts has described the § 9613(f) as a carrot and stick combination. The carrot the EPA can offer potential settlors is that they need no longer fear that a later contribution action by a non-settlor will compel them to pay still more money to extinguish their liability. In addition, settlors themselves are enabled to seek contribution against non-settlors. 42 U.S.C. § 9613(f)(3)(B). The stick is that if the settlor pays less than its proportionate share of liability, the non-settlors, being jointly and severally liable, must make up the difference. *See In re Acushnet River & New Bedford Harbor*, 712 F.Supp. 1019, 1027 (D.Mass.1989). The language of CERCLA plainly envisions the likelihood of resultant disproportionate liability: the potential liability of the others is reduced "by the amount of the settlement," not by the settlor's proportionate share of any dam-

ages ultimately determined to have been caused. § 9613(f)(2). *See, e.g., U.S. v. Cannons Engineering Corp.*, 899 F.2d 79, 91–92 (1st Cir.1990).

*Motion to Dismiss*

*42 U.S.C. § 9613(f)*

■ Union Gas's principal argument in support of its motion to dismiss the Commonwealth's counterclaim is that the counterclaim amounts to a claim for contribution against "a person [Union Gas] ... who has resolved its liability to the United States ... in ... a judicially approved settlement." The company's position is that because the counterclaim for contribution is "regarding matters addressed in the settlement," the counterclaim is barred by § 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2).

The court agrees with Union Gas that the language of § 113(f)(2) and the case law interpreting that section uniformly support the company's argument that § 113(f)(2) acts as a bar to claims for contribution against a party who has settled its liability to the United States for matters covered by the settlement. *See U.S. v. Cannons Engineering Corp.*, 899 F.2d 79, 91 (1st Cir.1990) (section 113(f)(2) immunizes settling parties from liability for contribution); *Central Illinois Pub. Serv. Co. et al. v. Indus. Oil Tank & Line Cleaning Serv., et al.*, 730 F.Supp. 1498, 1504–05 (W.D.Mo.1990) (CERCLA intended to preclude contribution actions by nonsettling parties against those parties that settled with the government); *In re Acushnet River*, 712 F.Supp. 1019, 1026 (D.Mass.1989) (section 113(f)(2) grants settlors protection from contribution liability to non-settlors). However, what is not clear to the court is whether the counterclaim addresses the same subject matter covered by the settlement between the United States and Union Gas.

Section 113(f)(2) plainly gives Union Gas the right to resist actions for contribution covering the same subject matter as the settlement. Both the language of the act and the case law interpreting that language strongly indicate a congressional in-

tent to encourage settlement and even to penalize non-settling parties under certain circumstances. *See Cannons Engineering*, 899 F.2d at 91 ("[i]n the SARA Amendments, Congress explicitly created a statutory framework that left non-settlors at risk of bearing a disproportionate amount of liability").

However, CERCLA does not provide a blanket exemption from further liability under CERCLA or state law. The immunity from contribution would not be available for claims relating to matters not addressed in the prior settlement, such as subsequent violations of CERCLA. Courts must strike a balance between the policy behind CERCLA's contribution provisions and the policy behind the act as a whole. The contribution provisions were designed to encourage settlement of CERCLA actions. The policy behind the statute as a whole is to give the federal government the tools necessary for a prompt and effective response to the problems of national magnitude resulting from hazardous waste disposal. *Dedham Water Co.*, 805 F.2d at 1081. To interpret 42 U.S.C. § 9613(f)(2) as providing complete immunity from contribution to settling parties would frustrate the policy behind the statute as a whole. Such a reading would create a situation where persons settling with the United States who are later responsible for an unrelated act of improper disposal of hazardous waste would find themselves immune from liability under CERCLA or state laws—a result clearly not envisioned by CERCLA.

The fact that settling parties will not be immunized from suits for contribution for matters not covered in the settlement is obvious from the consent decree at issue in this case. The stated purpose of the settlement is "to resolve this dispute between them as to the expenditure made by the United States on or before January 24, 1985." Under the terms of the agreement Union Gas agreed to pay the United States Hazardous Substances Response Trust Fund the sum of $700,000. In exchange

for the payment, the United States agreed to release Union Gas from any and all liability for the United States' expenditures made on or before January 24, 1985, in connection with the alleged discharge, release and threatened release of oil and hazardous and non-hazardous substances into the environment at the Site.[4] However, the decree also specifically stated the following:

4. The parties further intend that:

(a) This release shall not extend to Union Gas's liability, if any, for response costs expended after January 24, 1985, that are or were incurred by the United States in connection with its response to the discharge, release or threatened release of oil or hazardous substances into the environment from Union Gas's Stroudsburg facility ...

(c) This release shall not extend to Union Gas's liability, if any, for injunctive relief or for costs incurred by the United States in responding to circumstances where:

(1) Previously unknown or undetected conditions that arise or are discovered at the site after the effective date of this Consent Decree may present an imminent and substantial endangerment to public health, welfare or the environment, or,

(2) The United States receives additional information which was not available on or before the effective date of this Consent Decree concerning the scientific determination on which the settlement was premised and this additional information indicated that Site conditions may present an imminent and substantial endangerment to the public health or welfare or the environment.

The above exceptions to the release provide the court with a fairly good indication of what the parties themselves did not consider "the subject matter of the settlement" between Union Gas and the United States. If the Commonwealth's counter-

---

**4.** The consent decree defines the term "Site" as the property located 300 yards on either side of the center line of Brodhead Creek and bounded by the Main Street and I–80 bridges in the Boroughs of Stroudsburg and East Stroudsburg, Pennsylvania.

claims fall under paragraph 4, it would seem to the court that they should not be barred by § 9613(f)(2).

It is the view of this court that the term "subject matter" as used in § 9613(f)(2) incorporates the following: the particular hazardous substance at issue in the settlement; the location or site in question; the time frame covered by the settlement; and the cost of the cleanup. Having examined the counterclaim, the court is still unable to determine (with the certainty necessary to support granting Union Gas's motion to dismiss) whether it addresses the same subject matter as the settlement. However, the court notes that there are some similarities between the counterclaim and the settlement.

Counts I through IV are actions under various state statutes, each of which claims that Union Gas is liable for the presence or disposal of coal tar into the environment or the waters of the Commonwealth. The settlement agreement defines the discharged substance as "oil and hazardous substances," however, the third party complaint does identify these substances as coal tar.

The counterclaim does not define the exact location of this disposal. Count I simply claims that Union Gas's predecessors "poured coal tar on the ground and injected coal tar into the ground *at the site* and that the coal tar then entered *the environment* and was discharged *into the waters of the Commonwealth.*" Count II describes the location as "the site and adjacent areas as well as the water in Brodhead Creek." Count III concerns "the site" and "the waters of the Commonwealth." Count IV identifies "the waters of the Commonwealth at and adjacent to the site." The court cannot determine whether the subject matter is the same without more precise description of the site at issue in the counterclaim.

The court also cannot determine whether the time frame encompassed by the settlement is the same as that at issue in the counterclaim. Count I of the counterclaim states that between 1890 and 1948 Union Gas's predecessors poured coal tar on the ground and injected coal tar into the ground at the site, and claims further that Union Gas has not removed the coal tar. This claim seems to be identical to the claim made by the United States in its amended complaint against Union Gas. The settlement of this claim represented an agreement whereby Union Gas paid $700,-000 to the United States to reimburse the federal government for its costs incurred on or before January 24, 1985 in cleaning up coal tar that was placed in the ground by Union Gas's predecessors. It thus seems that the subject matter of Count I and the settlement agreement are the same. However, Count I also claims that "[t]he disposal was *and continues to be* unpermitted." It is unclear to the court whether the Commonwealth is making a claim for contribution for the same unpermitted disposal, or whether the Commonwealth is claiming that Union Gas continues to dispose of the coal tar in violation of state law.

Count II, however, specifically states that "the groundwater and soil at the site and adjacent areas as well as the water in Brodhead Creek have been and continue to be harmed by the companies' conduct." Counts III and IV also allege that the coal tar continues to be discharged into the waters of the Commonwealth. Again, the court is unable to determine whether this claim relates to disposal of coal tar known at the time of the settlement, or disposal that has occurred after January 1985. However, the court notes that counts I through IV essentially ask the court to award the Commonwealth on its state law claims whatever amount the court determines the Commonwealth owes Union Gas in the company's claim for contribution under § 113(f)(1) of CERCLA. This could be seen as an indication that the subject matter of the counterclaim is precisely the subject matter of settlement. If not, is seems odd that the amount due under the state law claims would be identical to the amount the Commonwealth is deemed to owe Union Gas in its action for contribution for the company's settlement with the United States.

Count V of the counterclaim is brought under CERCLA. The Commonwealth claims that Union Gas is liable to it for response costs that it has incurred as a result of Union Gas's and its predecessors release of hazardous substances into the streambed of Brodhead Creek and adjacent lands under 42 U.S.C. § 9607(a). Count V plainly seems to encompass the same subject matter as the settlement of the claim of the United States against Union Gas also brought pursuant to § 9607(a). However, it is possible that the Commonwealth's CERCLA claim relates to disposal of hazardous waste that was unknown at the time of the settlement.

Because the court is uncertain as to the precise subject matter of the counterclaim, the court will deny the motion to dismiss the counterclaim at this time. As the court understands the standard under Rule 12(b)(6), the court cannot dismiss the counterclaim if under any set of facts the Commonwealth could be entitled to relief. If further discovery is conducted that allows the court to determine the subject matter of the counterclaim, we will again take up the question of whether the motion to dismiss should be granted. Should the court later determine that the subject matter of the counterclaim is the same as that of the settlement, the court will honor Union Gas's right under § 9613(f)(2) to not be sued for contribution.

The court's willingness to honor Union Gas's right to obtain contribution from the Commonwealth without being subject to a claim for contribution itself is fueled by the fact that the United States Supreme Court has stated unequivocally that CERCLA clearly permits suits for money damages against States in federal court. *Pennsylvania v. Union Gas Co.,* 109 S.Ct. 2273, 2280–81.

*Preemption*

■ The above discussion of Union Gas's argument that § 9613(f)(2) bars the counterclaim overlaps to a large extent with the issue of whether CERCLA preempts the state law counterclaims (counts I, II, III and IV of the counterclaim) altogether. Preemption can occur in three instances:

when Congress, while acting within constitutional limits, preempts state law by stating so in express terms; when the federal regulation is sufficiently comprehensive to make it reasonable to infer that Congress left no room for supplementary state regulation; and, in those areas where Congress has not completely displaced state regulation, federal law may preempt state law to the extent that the state law actually conflicts with the federal law. *California Federal Savings & Loan Ass'n v. Guerra,* 479 U.S. 272, 281, 107 S.Ct. 683, 689, 93 L.Ed.2d 613 (1987).

■ Union Gas acknowledges that CERCLA does not expressly preempt state law, and it rests its preemption argument on its belief that the state law counts in the counterclaim are in conflict with CERCLA. Courts have found preemption under circumstances where compliance with the state law is inconsistent with compliance with CERCLA. *See, e.g., U.S. v. Akzo Coatings of America, Inc.,* 719 F.Supp. 571, 580 (E.D.Mich.1989). Union Gas argues that if the counterclaim goes forward it would be inconsistent with the policy behind CERCLA of immunizing settling parties from liability for contribution. Although when viewed in these broad terms the conflict is apparent, the court finds that the policy behind § 9613(f) is to insulate settling parties from liability for contribution only as to claims regarding the same subject matter. To read the section otherwise would be to interpret CERCLA as preempting any state law claim, no matter what the subject matter—a result clearly not intended by CERCLA. Until the court is satisfied that the state law counts address the same subject matter as the settlement, the court cannot support a finding of preemption.

■ Union Gas makes several additional arguments in support of its motion to dismiss certain counts in the counterclaim. First, Union Gas argues that there is no action for damages under the Clean Streams Law. The court agrees that 35 P.S. § 691.601 does not support a claim for damages. This law does, however, support "suits to abate ... nuisances or suits to

restrain or prevent violations of this act ... in the name of the Commonwealth." 35 P.S. § 691.601(a). Such suits can result in a court order requiring the responsible party to abate the condition and to compensate the Commonwealth for its expenses incurred in the cleanup. *See Commonwealth v. Barnes & Tucker Co.*, 23 Pa. Cmwlth.Ct. 496, 353 A.2d 471 (1976); *aff'd*, 472 Pa. 115, 371 A.2d 461, *appeal dismissed*, 434 U.S. 807, 98 S.Ct. 38, 54 L.Ed.2d 65 (1977); *see also City of Philadelphia v. Stepan Chemical Co.*, 544 F.Supp. 1135, 1150–51 (E.D.Pa.1982).

To the extent that counts III and IV of the counterclaim seek a court order to require Union Gas to abate the nuisance and compensate the Commonwealth for any costs it has incurred in abatement, the motion to dismiss will be denied. In the counterclaim the Commonwealth appears to be praying for a form of judgment and/or for a set-off. The court will determine the appropriate form of judgment at a later time; if such determination becomes necessary. However, under no circumstances will the court's determination support an award of damages under the Clean Streams Law. To the extent that the Commonwealth seeks such an award, the motion to dismiss counts III and IV will be granted. Finally, in its reply memorandum, the Commonwealth indicates that it may attempt to recover the cost of restoration as a civil penalty against Union Gas pursuant to 35 P.S. § 691.605. Because section 605 authorizes the assessment of civil penalties only by the Department of Environmental Resources, the Environmental Quality Board, or the Environmental Hearing Board, and not by a court, any claim for civil penalties will be dismissed. *See Stepan Chemical*, 544 F.Supp. at 1151.

Union Gas also argues that counts I and II under the Solid Waste Management Act should be dismissed because the SWMA cannot be applied retroactively; and that count V under CERCLA count is barred by the statute of limitations. The court also will deny the motion to dismiss on these grounds at this time because, as discussed above, the time frame addressed by the counterclaim is not entirely clear from the pleading. Until it is clear to the court whether the counterclaim addresses the cleanup effort in 1981 and 1982, as Union Gas claims, or whether it seeks to redress violations that are presently continuing, as the Commonwealth claims, the court cannot grant a motion to dismiss on these grounds.

*Motion to Strike*

■ Union Gas has moved to dismiss five of the affirmative defenses raised by the Commonwealth. For the reasons discussed below, this motion will be granted in part and denied in part. The Commonwealth claims that Union Gas's claim is barred by sovereign immunity. For this proposition, the Commonwealth cites to 1 Pa.C.S. § 2310 and the eleventh amendment of the Constitution of the United States. As discussed above, in an opinion affirming the holding of the Third Circuit, the United States Supreme Court held that CERCLA as amended by SARA "clearly evinces an intent to hold States liable in damages in federal court." *Pennsylvania v. Union Gas Co.*, 109 S.Ct. at 2280. Moreover, the Supreme Court ruled that "Congress has the authority to override States' immunity when legislating pursuant to the Commerce Clause." CERCLA unquestionably abrogates States' sovereign immunity. It is hard to imagine that the issue could be any clearer. Furthermore, any state statute or constitutional provision establishing sovereign immunity for suits similar to actions under § 113(f) of CERCLA would be in direct conflict with CERCLA, and accordingly preempted by it. *See Akzo Coatings*, 719 F.Supp. at 579–80. The court will accordingly dismiss the Commonwealth's third and fifth affirmative defenses.

■ The fourth affirmative defense claims that Union Gas's claim under CERCLA is barred by the company's "overarching duty under Pennsylvania law, to wit: the Clean Streams Law, ... the Pennsylvania Hazardous Sites Cleanup Act, ... and the Pennsylvania Solid Waste Management Act, or in the alternative, Union Gas Company is liable to the Commonwealth ... or must indemnify the Commonwealth ... be-

cause of these statutes." The court rejects the first part of this defense, but will let the argument in the alternative remain. The Supremacy Clause of the Constitution of the United States states:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made under the Authority of the United States, shall be the Supreme Law of the land; and the Judges of every States shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding. U.S. Const. Art. VI, cl. 2.

The court presumes that by arguing that Union Gas has an "overarching duty" under Pennsylvania law, the Commonwealth is suggesting that state law somehow takes precedence over CERCLA. This argument is in direct contravention of the Supremacy Clause, and the court accordingly rejects it. However, the court will let stand the Commonwealth's argument in the alternative that Union Gas is liable to it under the state statutes. If Union Gas fails to convince this court that the state law counterclaim covers the same subject matter as the settlement, under some set of circumstances this portion of the fourth affirmative defense could succeed.

 The seventh and eighth affirmative defenses claim that the doctrine of unclean hands bars Union Gas from recovering against the Commonwealth in its CERCLA contribution claim. Courts in this district and the Third Circuit have held that the doctrine of unclean hands has no place in CERCLA actions. In *Smith Land & Imp. Corp. v. Celotex Corp.*, 851 F.2d 86, 90 (3rd Cir.1988), the Third Circuit wrote:

> Doctrines such as caveat emptor and "clean hands," which in some cases could bar relief regardless of the degree of culpability of the parties, do not comport with congressional objectives. In the words of one district judge, "the 'unclean hands' doctrine ... has no place in CERCLA actions." *Chemical Waste Management v. Armstrong World Indus.*, 669 F.Supp. 1285, 1291 n. 7 (E.D.Pa. 1987).

Accordingly, the court will grant Union Gas's motion to strike the seventh and eighth affirmative defenses.

An appropriate order will be entered.

## ORDER

AND NOW, TO WIT, this 3rd day of July, 1990, in consideration of Third Party Plaintiff Union Gas Company's motion to dismiss counts I, II, III, IV and V of the counterclaim and motion to strike the third, fourth, fifth, seventh and eighth affirmative defenses, and the response filed thereto, it is hereby ORDERED that:

1. The motion to dismiss counts I, II and V is *denied.*

2. The motion to dismiss counts III and IV is *granted in part and denied in part.*

3. The motion to strike the third, fifth, seventh and eighth affirmative defenses is *granted.*

4. The motion to strike the fourth affirmative defense is *granted in part and denied in part.*

It is so ordered.