AMERICAN SPECIAL RISK INSURANCE COMPANY, f/k/a Cranford Insurance Company, and International Insurance Company, on behalf and in the name of South Macomb Disposal Authority, Plaintiffs,

and

Citizens Insurance Company of America, a Michigan corporation, Subrogee, on behalf and in the name of South Macomb Disposal Authority, Subrogor, Plaintiff–Intervenors,

v.

CITY OF CENTERLINE, City of Eastpointe, City of Roseville, City of St. Clair Shores, and City of Warren, Defendants.

No. 97–CV–72874–DT.

United States District Court,
E.D. Michigan,
Southern Division.

March 12, 2001.

George F. Curran, III, Hopkins, Curran, Southfield, MI, for American Special Risk

Insurance Company, International Insurance Company, plaintiffs.

Linda L. Blais, Mika, Meyers, Grand Rapids, MI, for Citizens Insurance Company of America, on behalf and in the name of South Macomb Disposal Authority, intervenor-plaintiff.

Roger K. Timm, Dykema Gossett, Detroit, MI, Aren L. Fairchild, Dykema Gossett, Detroit, MI, John A. Ferroli, Detroit, MI, for South Macomb Disposal Authority, intervenor.

Roger K. Timm, Dykema Gossett, Detroit, MI, John A. Ferroli, Detroit, MI, Dante A. Stella, Dykema Gossett, Detroit, MI, for City of Centerline, City of East-Pointe, City of Roseville, City of Saint Clair Shores, city of Warren, defendants.

## OPINION

DUGGAN, District Judge.

Plaintiffs are before this Court seeking contribution from Defendants under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9613(f), for costs associated with the remediation of two waste disposal sites in Macomb Township, Michigan.[1] This matter is currently before the Court on Defendants' motion for summary judgment in which Defendants assert that Plaintiffs' claim for CERCLA contribution is barred by CERCLA's contribution protection provision, 42 U.S.C. § 9613(f)(2), by virtue of an "administrative settlement" between Defendants and the State of Michigan.[2] Oral argument regarding Defendant's motion was heard on December 7, 2000. For the reasons stated below, Defendants' motion for summary judgment shall be denied.

## Background

During the early 1970's, the South Macomb Disposal Authority ("SMDA") owned and operated two landfills, sites 9 and 9A, located in Macomb Township. In 1983, a group of residents in Macomb Township filed suit against the SMDA and various state and local governmental agencies for damages resulting from the contamination of the groundwater at sites 9 and 9A ("the *Bielat* action"). After the State of Michigan settled with the private plaintiffs in the *Bielat* action, it realigned as a plaintiff against the SMDA.

In 1986, the SMDA was ordered to remediate sites 9 and 9A. Since 1986, the State of Michigan and the SMDA have been involved in drafting a settlement agreement regarding the remediation of these sites. As a result of its liability in the *Bielat* action, the SMDA filed suit against various insurance companies with which it was insured, including Plaintiffs, seeking insurance coverage for the costs associated with the remediation of sites 9 and 9A ("the *Westchester* action").

In 1997, facing the threat of potential liability to the SMDA in the *Westchester* action, Plaintiffs filed the instant action "in the name of the [SMDA]" pursuant to the

---

1. In addition to their CERCLA contribution claim, Plaintiffs originally asserted claims for indemnification under CERCLA, common law indemnification, common law contribution, and unjust enrichment. These claims, however, were subsequently dismissed, leaving only Plaintiffs' claim for contribution under CERCLA. (*See* 9/30/99 Op. and Order; 2/11/00 Order).

2. Plaintiffs have also filed a motion for summary judgment regarding liability only, and for reasonable attorney fees pursuant to Rule

37 of the Federal Rules of Civil Procedure based upon Defendants' alleged failure to admit facts that, according to Plaintiffs, should have been admitted. During the hearing on December 7, 2000, the Court informed the parties that it intended to hold Plaintiff's motion for summary judgment in abeyance pending resolution of Defendants' motion for summary judgment, after which, a hearing regarding Plaintiffs' motion would be scheduled if necessary. Accordingly, this Opinion shall address only Defendants' motion for summary judgment.

authority granted them under their insurance contracts with the SMDA.[3] In this action, Plaintiffs assert SMDA's right to contribution under CERCLA against Defendants as arrangers, generators, and transporters of waste deposited in sites 9 and 9A.

### Discussion

Defendants assert that Plaintiffs are precluded from seeking contribution under CERCLA due to a recent "administrative settlement" between Defendants and the State of Michigan. According to Defendants, on October 31, 2000, they entered into an administrative settlement with the Michigan Department of Environmental Quality, the Michigan Attorney General, and the SMDA, which provides that:

> The State, SMDA, and each member City agree and intend that, upon execution of this Stipulation, pursuant to Section 20129(5) of the NREPA and Section 9613(f)(2) of the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. (CERCLA), SMDA, and each of the member Cities shall not be liable for claims for contribution for the matters addressed in the Agreement and the consent decree, including but not limited to all past and future response costs incurred by SMDA with respect to Sites 9 & 9A.

(Defs.' Mot.Summ.J., Ex. 1, ¶ 10).[4] According to Defendants, this stipulation "act[s] as an absolute bar to the CERCLA contribution claims of the insurers." (*Id.* at 3).

Congress enacted CERCLA in 1980 as a legislative solution to the worsening problem caused by the disposal of toxic wastes and the ensuing contamination of our land and water resources. Generally, CERCLA provides a financial scheme whereby persons responsible for generating, handling, brokering and/or transporting hazardous materials are jointly and severally liable for treating or disposing of such materials.

As originally enacted, CERCLA did not expressly provide for contribution actions among potentially responsible parties ("PRPs"). However, in an effort to encourage settlements and expedite the cleanup of hazardous waste, Congress amended CERCLA in 1986 to include several provisions addressing the issue of contribution among responsible parties and the effect of settlements on such claims. *See* 42 U.S.C. § 9613(f). The amendments specifically provided that any person deemed responsible under CERCLA could seek contribution from any other PRP. *Id.* § 9613(f)(1). The amendments further provided an incentive for PRPs to settle their potential liability with the government by granting settling parties protection from contribution actions by other PRPs. *Id.* § 9613(f)(2)–(3). Most important for purposes of this motion, the amendments specifically provided that:

> A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement. Such settlement does not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement.

*Id.* § 9613(f)(2).

Thus, under § 9613(f)(2), "a PRP that has entered into a settlement with the United States [or a State] may not be held

---

**3.** On February 5, 2001, this Court dismissed Citizens Insurance Company's complaint in intervention against Defendants per stipulation of the parties.

**4.** This provision shall be referred as "Paragraph 10."

liable for contribution to another PRP who has elected not to settle its CERCLA liability." *United States v. Pretty Prod., Inc.,* 780 F.Supp. 1488, 1494 (S.D.Ohio 1991). Courts have described the contribution provision of § 9613(f) as a "carrot and stick combination." *See United States v. Union Gas Co.,* 743 F.Supp. 1144, 1152 (E.D.Pa.1990). "The carrot the EPA can offer potential settlors is that they need no longer fear that a later contribution action by a non-settlor will compel them to pay still more money to extinguish their liability. In addition, settlors themselves are enabled to seek contribution against non-settlors." *Id.* (citing 42 U.S.C. § 9613(f)(3)(B)). "The stick is that if the settlor pays less than its proportionate share of liability, the non-settlors, being jointly and severally liable, must make up the difference." *Id.* (citing *In re Acushnet River & New Bedford Harbor,* 712 F.Supp. 1019, 1027 (D.Mass.1989)).

The contribution protection provision of § 9613(f)(2), however, "does not provide a blanket exemption from further liability under CERCLA or state law." *Union Gas,* 743 F.Supp. at 1153. Section 9613(f)(2) only provides immunity from further contribution claims when the party has resolved its CERCLA liability through "an administrative or judicially approved settlement," and the claims for contribution relate to the "matters addressed in the settlement." 42 U.S.C. § 9613(f)(2). Although the "agreement" Defendants rely upon is memorialized in an "Order & Stipulation for Second Amendment of the Agreement Regarding Remediation of SMDA Sites 9 & 9A," and was presented to and approved by the state court in the *Bielat* action, Defendants contend that this "agreement" is not a "judicially approved settlement," but rather, an "administrative settlement."

■ Regardless of whether the "agreement" between the State and Defendants is a "judicially approved settlement" or an "administrative settlement," the Court is satisfied that Plaintiffs' claims for contribution are not "matters addressed in the settlement" and that granting Defendants the broad immunity from contribution as individual arrangers, generators, and transporters of waste without having to contribute anything in return would run afoul of the principles underlying CERCLA. Therefore, Defendants' motion for summary judgment shall be denied.

*1. Matters Addressed in the Settlement*

Even if the Court were to find that the agreement in the *Bielat* action is an "administrative settlement" within § 9613(f)(2), Defendants' argument would fail as the Court is satisfied that Plaintiffs' CERCLA contribution claim against Defendants in their capacity as arrangers, generators, and transporters of waste deposited in sites 9 and 9A does not constitute a "matter[ ] addressed in the settlement." 42 U.S.C. § 9613(f)(2). Generally, in determining whether a consent decree or settlement agreement addresses the same subject matter as a contribution claim, courts look to "the particular hazardous substances at issue in the settlement, the location of the site in question, the time frame covered by the settlement, and the cost of the cleanup." *United States v. Colorado & E.R.R.,* 832 F.Supp. 304, 307 (D.Colo.1993) (internal quotation omitted); *see also Union Gas Co.,* 743 F.Supp. at 1154; *Pretty Prod., Inc.,* 780 F.Supp. at 1495 n. 4. These factors, however, do not represent an exhaustive list of the factors a court may consider.

■ Rather, in determining whether a particular contribution claim addresses matters in a settlement agreement, the Court must examine the agreement as a whole to determine its precise scope. *See e.g., United States v. Charter Int'l Oil Co.,*

83 F.3d 510, 517 (1st Cir.1996) (looking to text of decree in determining its scope as § 9613(f)(2) "does not dictate any particular method for assessing the scope of the decree"); *Akzo Coatings, Inc. v. Aigner Corp.*, 30 F.3d 761, 765 (7th Cir.1994) (turning to consent decree as starting point to determine scope of matters addressed by decree); *Colorado & E.R.R.*, 832 F.Supp. at 307 (stating that scope of protection must be determined from examining the consent decree as a whole); *Union Gas*, 743 F.Supp. at 1153–54 (examining entire consent decree and concluding that further information was necessary to determine whether consent decree addressed matters asserted in contribution claim); *Transtech Indus., Inc. v. A & Z Septic Clean*, 798 F.Supp. 1079, 1087–88 (D.N.J.1992) (stating that court must evaluate the terms of the consent decree itself and if a material fact about the scope of the consent decree is in dispute, motion to dismiss must be denied).

■ Furthermore, extremely broad contribution protection language should not be automatically extended beyond the bounds of the underlying suit to absolve the defendants of all possible liability. *Transtech Indus., Inc.*, 798 F.Supp. at 1088. Instead, such language "must be read in light of the action taken by the [governmental agency], the complex situation of [the] case, the policies behind CERCLA, and, most importantly, the matters the decree settles." *Id.* A court "must look to the [c]onsent [o]rder as a whole to decide whether its provisions encompass *the type of activity* for which plaintiffs seek to hold defendant liable." *Laidlaw Waste Sys., Inc.*, 925 F.Supp. at 632 (emphasis added).

The Court is satisfied that although Paragraph 10 of the October 31, 2000 Order and Stipulation purports to grant Defendants broad contribution protection

against any and all CERCLA claims, Paragraph 10 does not bar Plaintiffs' contribution claim in this action. The plaintiffs in the *Bielat* action never asserted any claims under CERCLA, let alone, any claims against Defendants as arrangers, generators, and transporters of waste. In fact, the only claims asserted against Defendants in the *Bielat* action were premised upon their status as the constituent members of the SMDA. (*See* Pls.' Resp., Ex. B). Furthermore, the *Bielat* plaintiffs' claims against Defendants were ultimately dismissed by the state court and therefore, at the time the October 31, 2000 Order and Stipulation was entered, Defendants faced no threat of direct liability in the state court action.[5] (*See id.,* Ex. C).

Defendants assert that parties are free to reach a settlement before a lawsuit is filed, rather than waiting for litigation to commence before initiating settlement discussions. Although the Court agrees with Defendants' general proposition, in determining whether the policies behind CERCLA support a finding of broad immunity from all CERCLA liability, the Court must consider the situation as a whole. In this case, Defendants faced no threat of individual liability as arrangers, generators, or transporters of waste at the time of the alleged "administrative settlement." At the time of the "administrative settlement," there were no pending claims, state or federal, against Defendants in their individual capacities; nor is there any evidence that the State of Michigan had any intention to pursue either state or federal claims against Defendants as individual arrangers, generators, or transporters of waste.

With the exception of Paragraph 10, the October 31, 2000 Order and Stipulation, which Defendants themselves contend

---

**5.** Although the state court granted the *Bielat* plaintiffs an opportunity to amend their complaint, there is no indication that they ever did so.

"sets forth all of the provisions of the settlement among the State, SMDA, and [Defendants] which are relevant to this motion," concern only Defendants' obligations as constituent members of the SMDA, not their potential direct liability as arrangers, generators, and transporters of waste. (Defs.' Br.Supp.Mot.Summ.J. at 2 n. 2). For example, the October 31, 2000 stipulations specifically recognize that each of the Defendants is a constituent member of the SMDA, and that the approval of each of the Defendants "is necessary to amend SMDA's Articles of Incorporation to enable SMDA to impose a levy on its constituent members to provide the requisite funds for SMDA to satisfy its obligations under the Agreement." (*Id.*, Ex. 1, ¶ 3). The stipulations further provide that in voluntarily becoming parties to the agreement, "[n]one of the [Defendants] waive[d] any rights provided by prior rulings in the *Bielat* action that dismissed private party damage claims that had been asserted against them," and that the agreement was being amended to include Defendants "each as a party to the Agreement for the limited purposes set forth herein." (*Id.*, Ex. 1, ¶ 4).

These "limited purposes" are clearly set forth in paragraph 6 of the October 31, 2000 Order and Stipulation, which provides:

> The parties further agree that the member Cities will provide to SMDA whatever funds are necessary so that SMDA is able fully *to carry out SMDA's obligations* under this Agreement and the consent decree; and to amend the SMDA Articles of Incorporation, if necessary, so that SMDA is able fully *to carry out SMDA's obligations* under this Agreement and the consent decree. The member Cities become parties to the *Bielat* action solely to enable the Court to enforce the provisions of this Agreement and the consent decree that

set forth the obligations to which the member Cities have agreed.

(*Id.*, Ex. 1, ¶ 6) (emphasis added). Under paragraph 8, Defendants agree "to provide to SMDA the funds necessary to undertake such additional remedial measures as are necessary," and under paragraph 9, Defendants "agree[ ] to pay any levy made by SMDA consistent with SMDA's Articles of Incorporation to obtain the requisite funds *for SMDA to perform its obligations.*" (*Id.*, Ex. 1, ¶¶ 8–9). Paragraph 9 further provides that the state court shall have the authority to take any lawful action to enforce the terms of the agreement, "including ordering SMDA to levy its member Cities to obtain additional funds; ordering all or any of the members to pay any SMDA levy; and/or ordering SMDA and/or all or any of the member Cities to amend the SMDA Articles of Incorporation to enable SMDA to make such levies as are necessary for SMDA to carry out its obligations." (*Id.*, Ex. 1, ¶ 9).

The "matters addressed" by the "administrative settlement" between Defendants and the State were strictly limited to Defendants' obligations as constituent members of the SMDA. Absolutely nothing in the October 31, 2000 Order and Stipulation addresses Defendants' direct liability as arrangers, generators, and transporters of waste deposited in sites 9 and 9A. Although Paragraph 10 of the alleged "administrative settlement" purports to convey broad contribution immunity upon Defendants, nothing in the agreement indicates that the State intended the settlement to include Defendants' liability, state or federal, as arrangers, generators, and transporters of waste, but rather, only their obligations as constituent members of the SMDA.

The Court also notes that under this "administrative settlement," Defendants gave up nothing beyond what was already

required of them as constituent members of the SMDA. For example, under the alleged "administrative settlement," Defendants, in their individual capacities, have assumed no cleanup responsibilities; nor have Defendants, in their individual capacities, agreed to pay any monetary amount. All Defendants have agreed to do is allow the SMDA to levy them for any remediation costs incurred by the SMDA. As indicated by Mr. Ted Wahby's affidavit of October 29, 1999, at the time Defendants entered into the alleged administrative settlement, each of the Defendant Cities had already passed resolutions committing them to pay their share of the SMDA's costs as part of the underlying settlement negotiations with the SMDA. (Wahby Aff. ¶ 10). In this Court's opinion, allowing Defendants to reap the benefits of such broad immunity without giving anything in return would directly contravene the purpose behind CERCLA.

Defendants' own correspondence with various remediation contractors also evidences that by entering into their alleged administrative settlement with the State, Defendants themselves never intended to assume any direct liability. For example, Defendants instructed one contractor that "[the] Agreement has to make clear that the payment is by SMDA, not SMDA and its member cities, for SMDA's insurance purposes," that another paragraph "need[ed] to be rewritten so that only SMDA is liable for payment," and that other paragraphs also "need to be modified so that it is absolutely clear than only SMDA is paying and obligated to pay." (Pls.' Resp., Ex. L).

In summary, the Court is satisfied that the matters addressed by the "administrative settlement" cited by Defendants do not encompass Defendants' individual liabilities as arrangers, generators, and transporters of waste and therefore, Plaintiffs' claims are not barred.

### 2. Due Process Concerns

Furthermore, the Court has serious concerns regarding whether the alleged "administrative settlement" cited by Defendants constitutes the type of administrative settlement contemplated by § 9613(f)(2). As counsel for Defendants admitted during oral argument, Plaintiffs had no notice regarding the alleged settlement. Counsel for Defendants also admitted that Defendants' sole intent in entering into the alleged agreement was to bar Plaintiffs' claims in this case.

Some courts have intimated that broad contribution protection provisions should not be upheld when entered into under circumstances such as this, *i.e.*, where the alleged agreement has been formulated under a process devoid of hearings or public comment. *See CPC Int'l*, 759 F.Supp. at 1283 (stating in dicta that settlement entered under process devoid of any hearings or public comment was not "administrative or judicially approved" settlement under § 9613(f)(2)). As these courts have recognized, "due process concerns are magnified when a PRP seeks to use an administrative settlement to extinguish another PRP's contribution rights." *General Time*, 826 F.Supp. at 476. Section 9622 of CERCLA, which sets forth a very specific and detailed notice and comment procedure for administrative settlements entered into by the EPA, evidences Congress's concern with procedural due process in such situations. *See* 42 U.S.C. § 9622; *General Time*, 826 F.Supp. at 476–78. Although § 9622's specific notice and comment procedures are only applicable to the federal government, such due process concerns are in no way lessened by the mere fact that the State, instead of the federal government, is a party to the administrative settlement.

In response, Defendants assert only that all affected parties had notice, *i.e.*, Defen-

dants, the SMDA, and the State. According to Defendants, Plaintiffs, who are suing pursuant to their contractual rights with the SMDA, have no greater rights than the SMDA. Notwithstanding the fact that Plaintiffs are suing pursuant to the authority granted them under their insurance contracts with the SMDA, it is undisputed that Defendants were aware of Plaintiffs' claims against them at the time they entered into their "administrative settlement" with the State. It should also be noted that the same counsel is representing both the Defendant Cities and the SMDA. Therefore, this case presents a unique opportunity for collusion as the only PRPs who are parties to the alleged administrative settlement are represented by the same counsel.

In any event, the Court finds it unnecessary to determine the exact requirements of due process in this case because, as previously discussed, the Court is satisfied that the matters addressed in the alleged settlement do not encompass those asserted by Plaintiffs in this case.

### Conclusion

For the reasons stated above, Defendants' motion for summary judgment shall be denied.

An Order consistent with this Opinion shall issue forthwith.

### ORDER

This action involves a claim for contribution under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9613(f), for costs associated with the remediation of two waste disposal sites in Macomb Township, Michigan. This matter is currently before the Court on Defendants' motion for summary judgment in which Defendants assert that Plaintiffs' claim for CERCLA contribution is barred by virtue of an administrative settlement

between Defendants and the State of Michigan.

For the reasons stated in an Opinion issued this date,

**IT IS ORDERED** that Defendants' motion for summary judgment is **DENIED.**