**UNITED STATES of America, Plaintiff,**

v.

**PRETTY PRODUCTS, INC., et al., Defendants and Third–Party Plaintiffs,**

v.

**CITY OF COSHOCTON, OHIO, Third–Party Defendant.**

**No. C–2–91–74.**

United States District Court, S.D. Ohio, E.D.

Dec. 13, 1991.

Richard B. Stewart, Asst. Atty. Gen., Environment and Natural Resources Div., U.S. Dept. of Justice, Leonard M. Gelman, Atty., Environmental Enforcement Section, U.S. Dept. of Justice, Washington, D.C., and Sherry L. Estes, Asst. Regional Counsel, U.S.E.P.A., Chicago, Ill., for plaintiff U.S.

David J. Young and C. Craig Woods, Squire, Sanders & Dempsey, Columbus, Ohio, for defendants and third-party plaintiffs Pretty Products, Inc. and Lancaster Colony Corp.

Keith A. Savidge and Patrick J. McIntyre, Seeley, Savidge & Aussem Co., L.P.A., Cleveland, Ohio, for third-party defendant City of Coshocton, Ohio.

## OPINION AND ORDER

KINNEARY, Senior District Judge.

This matter comes before the Court to consider a variety of motions filed by the Plaintiff, United States of America ("United States" or "EPA"), and the Third–Party Defendant, City of Coshocton, Ohio ("City"). The Court will first address the City of Coshocton's motion to dismiss the Third–Party Complaint filed by Defendants Pretty Products, Inc. ("Pretty Products") and Lancaster Colony Corp. ("Lancaster").[1]

---

**1.** The City of Coshocton's motion asked, in the alternative, that this Court stay the proceedings until this Court had an opportunity to rule on the Consent Decree in a related case styled *United States v. City of Coshocton,* No. C–2–90–165 (S.D.Ohio, filed Feb. 23, 1990) (Kinneary, J.).

Fed.R.Civ.P. 12(b). Next, the Court will consider the United States' two motions to strike various affirmative defenses of the Defendant, Pretty Products, Inc. Fed. R.Civ.P. 12(f). Finally, the Court will consider the United States' motion for partial summary judgment. Fed.R.Civ.P. 56.

## BACKGROUND

This is a civil action brought pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. §§ 9601–9675 ("CERCLA"), as amended by the Superfund Amendments and Reauthorization Act of 1986, Pub.L. No. 99–499, 100 Stat. 1613 ("SARA"), against Pretty Products and Lancaster, its parent corporation. In Count I of the two-count Complaint, the United States seeks— from Pretty Products only—the recovery costs incurred and the remaining future costs to be incurred for investigative, removal, and remedial activities in response to the release or threatened release of hazardous substances at the Coshocton City Landfill Site. 42 U.S.C. § 9607. In Count II of the Complaint, the United States seeks civil penalties and injunctive relief for both Pretty Products' and Lancaster Colony Corporation's refusal to supply certain requested information and documents pursuant to 42 U.S.C. § 9604(e).

Defendants Pretty Products and Lancaster allege in their Third–Party Complaint against the City of Coshocton that the City is liable to them for contribution under CERCLA, Ohio state law, and common law theories of indemnity, breach of express or implied contract, quasi-contract, quantum meruit, restitution, and unjust enrichment. Essentially, Pretty Products was one of several contributors of commercial and industrial solid and liquid wastes to a landfill operated by the City between 1968 and 1979. Pretty Products disputes its liability for the cleanup of the Coshocton landfill site and argues that the City's inadequate operation of the landfill renders it liable for a substantial portion of the clean-up costs.

Of great import to the decision of the Court in the case *sub judice* is the resolution of a related case styled *United States v. City of Coshocton*, No. C–2–90–165 (S.D.Ohio, filed Feb. 23, 1990) (Kinneary, J.). On July 22, 1991, this Court accepted a Consent Decree previously agreed to by the United States and every identified potentially responsible party ("PRP") except Pretty Products.[2] Apparently, Pretty Products withdrew from the negotiations preceding the entry of the Consent Decree because it refused to accept that it had anything other than de minimis liability for the clean-up costs in Coshocton.

## I. CITY OF COSHOCTON'S MOTION TO DISMISS THIRD–PARTY COMPLAINT

With respect to the City's motion to dismiss, this Court is faced with a situation in which the government has reached an accord with eight of the nine identified PRP's. The Consent Decree—accepted by this Court—directs that the eight settling parties shall take numerous remedial actions at the Coshocton site and shall be responsible for two-thirds of the E.P.A.'s oversight costs associated with the cleanup

Because this Court approved the Consent Decree on July 22, 1991, the City's motion to stay proceedings is moot.

**2.** Although Pretty Products was not a signatory to the Consent Decree, it was allowed to participate as an Intervenor–Defendant in the action in which the Decree was entered. Additionally, Pretty Products joined with the United States and the Settling Defendants in a stipulation which amended the Consent Decree and provided for the withdrawal of Pretty Products' single comment and objection to the Decree. The amended Consent Decree only differs from the original Decree in that it fails to contain the following language:

> [The Settling Defendants and the United States] further agree that the costs to be incurred by the Settling Defendants in connection with this settlement represent at least their fair combined share of all costs and liabilities that should be borne by the person legally responsible for conditions at the Facility known at the time of entry of this Consent Decree.

The amended Decree does state, however, that it "provides the Settling Defendants with contribution protection as provided in Section 113(f) of the Superfund Amendments and Reauthorization Act of 1986."

of the site. The United States now seeks to hold Pretty Products liable for the remaining costs, and Pretty Products in turn seeks contribution, indemnification, and restitution in various forms from the City for its role as the allegedly negligent owner and operator of the site. The instant motion, filed by the City, seeks dismissal of the Third–Party Complaint on the grounds that Pretty Product's contribution claims are barred by CERCLA and the Ohio Contribution Among Joint Tortfeasors Act, Ohio Rev.Code § 2307.31 *et seq.*

## STANDARD OF REVIEW

■ A motion to dismiss under Fed. R.Civ.P. 12 will be granted only when it appears to a legal certainty that no relief could be granted under any set of facts that could be proved. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Neal v. Bergland,* 646 F.2d 1178, 1184 (6th Cir.1981), *aff'd sub nom. Block v. Neal,* 460 U.S. 289, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983); *Dann v. Studebaker–Packard Corp.,* 288 F.2d 201 (6th Cir.1961). Thus, this Court must determine whether the claimant is entitled to offer evidence on the claim, not whether the claim will succeed on its merits. *McDaniel v. Rhodes,* 512 F.Supp. 117, 120 (S.D.Ohio 1981). As such, extrinsic evidence may not be considered by this Court. *Minatsis v. Brown,* 713 F.Supp. 1056 (S.D.Ohio 1989).

## DISCUSSION

Generally, CERCLA provides a financial scheme whereby persons who are found to be responsible for generating, handling, and/or transporting hazardous materials can be held liable for the cleanup and disposal of such waste. Under this scheme, CERCLA provides for joint and several liability for persons found to be responsible for the existence of hazardous materials in the environment.

■ In order to encourage settlements and expedite the cleanup of hazardous waste sites, Congress specifically addressed the issue of claims for contribution and the effect of settlements on such claims:

(1) Contribution

Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under 9606 of this title or under section 9607(a) of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 or section 9607 of this title.

(2) Settlement

A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement. Such settlement does not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement.

(3) Persons Not Party to Settlement

(A) If the United States or a State has obtained less than complete relief from a person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement, the United States or the State may bring an action against any person who has not so resolved its liability.

(B) A person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement referred to in paragraph (2).

(C) In an action under this paragraph, the rights of any person who has re-

solved its liability to the United States or a State shall be subordinate to the rights of the United States or the State. Any contribution action brought under this paragraph shall be governed by Federal law.

42 U.S.C. § 9613(f). Thus, a PRP that has entered into a settlement with the United States may not be held liable for contribution to another PRP who has elected not to settle its CERCLA liability. The result in such situations, although perhaps somewhat Draconian, is explicitly required by the clear statutory language:

> Congress's goal of achieving expeditious settlements was furthered through Section 9613(f)(2), which places non-settling CERCLA Defendants at a disadvantage in two ways. First, it leaves them open to contribution claims from settling Defendants who have paid more than their proportionate share of liability. Second, if the settling Defendants have paid less than their proportionate share of liability, Section 113(f)(2) apparently compels the non-settlers to absorb the short fall.

*Central Illinois Pub. Serv. Co. v. Industrial Oil Tank & Line Cleaning Serv.*, 730 F.Supp. 1498, 1504 (W.D.Mo.1990) (quoting *City of New York v. Exxon Corp.*, 697 F.Supp. 677 (S.D.N.Y.1988)). This interpretation is consistent with the vast majority of federal court decisions. *See, e.g., United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 91 (1st Cir.1990) ("The statute immunizes settling parties from liability for contribution and provides that only the amount of the settlement—not the pro rata share attributable to the settling party—shall be subtracted from the liability of the nonsettlors. This can prove to be a substantial benefit to settling PRPs—and a corresponding detriment to their more recalcitrant counterparts.") (footnote omitted); *United States v. Alexander*, 771 F.Supp. 830, 834 (S.D.Tex.1991) (settling

parties "are protected from just such claims for contribution by virtue of their willingness to settle early on with the government); *Comerica Bank–Detroit v. Allen Industries, Inc.*, 769 F.Supp. 1408, 1410 (E.D.Mich.1991) ("The terms of § 113(f)(2) make it clear that the cross claims [for contribution] do not survive the settlement between the State and [the defendant]."); *United States v. Union Gas Co.*, 743 F.Supp. 1144, 1152 (E.D.Pa.1990) (describing § 9613(f) as adopting a "carrot and stick" approach: "The carrot the EPA can offer potential settlors is that they no longer fear that a later contribution action by a non-settlor will compel them to pay still more money to extinguish their liability.... The stick is that if the settlor pays less than its proportionate share of liability, the non-settlors ... must make up the difference."); *Allied Corp. v. Frola*, 730 F.Supp. 626, 638 (D.N.J.1990) ("[CERCLA] provides the settlors with a statutory signal that any settlement they reach would end their liability in the case. Hence, by a settlement their liability in the case is extinguished. Since the non-settlors remain jointly and severally liable, they must make good the balance regardless of whether the settlor paid less than its proportionate share of liability."); *United States v. Rohm & Haas Co.*, 721 F.Supp. 666, 676 (D.N.J.1989) ("while non-settlors lose their contribution rights, defendants who are parties to a CERCLA settlement retain the right to seek contribution from the non-settling PRPs [potentially responsible parties]"); *In re Acushnet River and New Bedford Harbor*, 712 F.Supp. 1019 (D.Mass.1989).

■ With this great weight of authority in mind, the Court concludes that the contribution claims [3] against the City of Coshocton are barred by the operation of § 9613(f)(2).[4] This Court recognizes—as

---

**3.** Both the federal and state law claims must be dismissed. If this Court were to allow the state law claims for contribution to remain, CERCLA's immunity for settling parties would be illusory, i.e., a stick with no carrot. Because it is clear that Congress enacted the SARA amendments to encourage quick settlements, Congress could not possibly have intended to allow non-

settling parties to negate CERCLA's settlement incentive through the use of state contribution claims.

**4.** The claims for contribution are barred only to the extent they regard "matters addressed in the settlement." § 9613(f)(2). In determining whether a claim is made regarding matters not

have many others before it—that the result of the remedial scheme adopted by Congress "plainly envisions the likelihood of resultant disproportionate liability." *Union Gas*, 743 F.Supp. at 1152. However, "that is not to say that the device is forbidden. To the exact contrary, Congress has made its will explicit and the courts must defer." *Id.* "To the extent that the non-settling parties are disadvantaged in any concrete way by the applicability of [42 U.S.C. § 9613(f)(2)] to the overall settlement, their dispute is with Congress." *Exxon*, 697 F.Supp. at 694. Because this Court is simply without power to ignore or amend Congress' decision to encourage settlements through the possibility that non-settling parties may be forced to bear a disproportionate amount of liability, the Third–Party Complaint is dismissed to the extent it seeks contribution from the City of Coshocton.[5]

Additionally, the City seeks dismissal of the Pretty Products' state law claims for indemnity, breach of express or implied contract, and various equitable doctrines including quasi-contract, quantum meruit, restitution and unjust enrichment. The Court will consider each of these, with the contract claim considered last.

■ "Indemnity" involves a "collateral contract or assurance, by which one person engages to secure another against an anticipated loss or to prevent him from being damnified by the legal consequences of an act or forbearance on the part of one of the parties or of some third person." Black's Law Dictionary (5th ed. 1979). While the right to indemnity is based upon principles of equity, "it is said that indemnity springs

from a contract, express or implied." 18 Ohio Jur.3d, Contribution, Indemnity, and Subrogation § 35. *See also Travelers Indemnity Co. v. Trowbridge*, 41 Ohio St.2d 11, 13–14, 321 N.E.2d 787, 789 (1975) ("Indemnity, ... arises from contract, express or implied, and is a right of a person who has been compelled to pay what another should pay in full to require complete reimbursement."). Thus, indemnification is somewhat different from contribution, which "is founded, not upon contract, but upon principles of equity and natural justice, which require that those who voluntarily assume a common burden shall bear it in equal proportions and that one party shall not be subject to bear more than his just share, to the advantage of his co-obligors." *Id.* at § 7. This distinction is based on the recognition that complete reimbursement (i.e. indemnity) should be available, pursuant to equitable principles, for those who incur tort liability as a result of their *relationship* to another party, as opposed to their *personal negligence*. *Allstate Ins. Co. v. U.S. Assocs. Realty, Inc.*, 11 Ohio App.3d 242, 246, 464 N.E.2d 169, 173 (1983).

■ From a review of the Third–Party Complaint, it is apparent that Pretty Products' claim for indemnity is merely a disguised claim for contribution. Nowhere in any of its pleadings does Pretty Products allege the existence of a contract—either express or implied—which purports to establish an indemnitee-indemnitor relationship between the City and itself.[6] Without such an agreement, Pretty Products' claim is merely an equitable one, and as such, it is a claim for total contribution which is

---

addressed in the settlement, a court must consider various factors, including the particular hazardous substance at issue in the settlement, the location or site in question, the time frame covered by the settlement, and the cost of the cleanup. *See Union Gas*, 743 F.Supp. at 1154. For instance, where disposal of hazardous wastes is continuing, a settlement may purport to cover a limited time period only. In such a situation, a claim for contribution may survive a settlement *to the extent* it seeks contribution for disposals occurring outside of the settlement time period. Having examined the Third–Party Complaint in this case, it is apparent that all claims for contribution regard "matters ad-

dressed in the settlement" and may therefore be dismissed in their entirety.

5. The Court's decision on this issue renders the City's arguments with respect to the Ohio Contribution Among Joint Tortfeasors Act moot.

6. In its Fourth Claim, Pretty Products does allege the existence of a contract under which the City was obligated to dispose of Pretty Products' waste "properly and in accordance with applicable law." Nowhere, however, has Pretty Products alleged the existence of a contractual provision providing for any type of indemnification.

preempted by the explicit provisions of CERCLA.[7] *See Cannons Eng'g,* 899 F.2d at 92 ("Appellants allege no contractual basis for indemnification. Their noncontractual indemnity claim, by definition and extrapolation, 'is in effect only a more extreme form of [a claim for] contribution.'") (quoting *Drake v. Raymark Industries, Inc.,* 772 F.2d 1007, 1011 n. 2 (1st Cir.1985), *cert. denied,* 476 U.S. 1126, 106 S.Ct. 1994, 90 L.Ed.2d 675 (1986)); *Central Illinois,* 730 F.Supp. at 1506 ("[T]he parties in this case engage in commercial relations pursuant to various contracts, none of which contained an indemnification provision. The court concludes that if any of the parties intended to be protected by indemnification, they should have negotiated mutually acceptable indemnification provisions and included them in their contracts.... Most importantly, however, implying an equitable right to indemnity in this case would utterly undermine the contribution protection provisions of CERCLA.").

The same reasoning that is dispositive of the equitable indemnity claim is dispositive of Pretty Products' remaining equitable claims. Congress's intent to encourage quick settlements of CERCLA actions would be utterly frustrated if non-settling parties were allowed to pursue equitable state restitutionary claims—which differ from contribution claims in form but not substance—against settling parties. This Court cannot allow state claims to circumvent the obvious intent of Congress.[8]

This result is not inconsistent with the federal court decisions cited by Pretty Products in its memorandum contra. While CERCLA does contain express provisions preserving additional liability under state law, *see* 42 U.S.C. § 9614(a), 42 U.S.C. § 9607(e), and 42 U.S.C. § 9652(d), these general provisions must be read in the context of the specific provision granting contribution immunity to settling parties. 42 U.S.C. § 9613(f). Thus, because virtually every case cited by Pretty Products occurred outside the context of a settlement between the government and various potentially responsible parties, the decisions do not consider the effect of § 9613(f) and are inapposite.[9] *See Boone v. DuBose,* 718 F.Supp. 479 (M.D.La.1988) (involving motion to remand, not judicially approved CERCLA settlement); *Con-Tech Sales Defined Benefit Trust v. Cockerham,* 715 F.Supp. 701 (E.D.Pa.1989) (occurring outside the context of a judicially approved

---

**7.** Even if Pretty Products' claim for indemnification was based on a contractual provision, this Court would be skeptical of any attempt to make an end run around CERCLA's contribution immunity. *See, e.g., Cannons Eng'g,* 899 F.2d at 92–93 ("Clearly, if appellants' claims for partial contribution can validly be barred in the course of implementing a CERCLA settlement, ... their claims for total contribution, i.e., indemnity, can likewise be foreclosed.").

**8.** That Pretty Products' equitable claims are merely a subterfuge designed to affect an end run around CERCLA's contribution immunity is demonstrated by the statement in its memorandum contra that "[e]ach of these claims is based upon an equitable doctrine which is intended to ensure that the City bears responsibility for the proportion of harm which it caused at the site." Defs' Mem. Contra City of Coshocton's Mot. to Dismiss the Third–Party Compl., at 12. The possibility of inequitable apportionment of responsibility is precisely the means by which Congress intended to encourage quick settlements.

**9.** In *United States v. Union Gas Co.,* 743 F.Supp. 1144 (E.D.Pa.1990), cited by Pretty Products, the district court did consider a situation involving a CERCLA settlement. Pretty Products argues that the court "refused to dismiss the counterclaim on the grounds that CERCLA was 'clearly not intended' to preempt any state law claim." Defendants' Mem. Contra City of Coshocton's Mot. to Dismiss the Third–Party Compl., at 13. This argument is, however, misleading as to the court's ultimate judgment. A review of the entire decision reveals that the court actually held that CERCLA was not intended to preempt *every* state law claim, not *any* state law claim. Thus, consistent with this Court's decision, the *Union Gas* court held that CERCLA "insulate[s] settling parties from liability for contribution only as to claims regarding the same subject matter [as the settlement]." 743 F.Supp. at 1155. The *Union Gas* court refused to dismiss the complaint merely because it was not satisfied that all contribution claims concerned the same subject matter as the settlement. Apparently, the court was concerned with possible "subsequent violations of CERCLA." *Id.* at 1153. Because the Coshocton landfill has not been accepting hazardous waste since 1979, this Court need not concern itself with such possibilities and is convinced that any contribution claims in the Third–Party Complaint can only concern the subject matter of the settlement.

settlement, with no consideration of § 9613(f)); *United States v. Moore*, 703 F.Supp. 460 (E.D.Va.1988) (occurring outside the context of a judicially approved settlement); *Allied Towing Corp. v. Great Eastern Petroleum Corp.*, 642 F.Supp. 1339 (E.D.Va.1986) (occurring before operation of SARA amendments and outside the context of a judicially approved settlement); *but see Allied Corp. v. Frola*, 730 F.Supp. 626, 639 (D.N.J.1990) (finding that "CERCLA does not restrict the right to common law indemnification" in the context of a judicially approved settlement). Similarly, the Ohio decisions cited by Pretty Products are equally inapposite in that they occur outside the context of CERCLA.

Finally, Pretty Products has included a claim in its Third–Party Complaint for breach of an express or implied contract. Essentially, Pretty Products asserts that they "entered into a contract with the City to dispose of certain wastes during the period the Site was being operated by the City. A[n] expressed and/or implied obligation of this contract was that the City would dispose of the waste properly and in accordance with applicable law." Third–Party Complaint, at 10.

Federal Rules of Civil Procedure 14 states in relevant part:

> (a) When Defendant May Bring in Third Party. At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a

summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff.

Pretty Products has made manifest in its Complaint against the City that it is seeking damages related to "discharging its liability, if any, which arises from these proceedings." Third–Party Complaint, at 11. To that extent, the Complaint seeks damages from a person allegedly liable to Pretty Products "for all or part of the plaintiff's claim" and, therefore, satisfies the derivative liability requirement of Rule 14.[10] But because this in effect seeks indemnification from the City, the claim must be dismissed as preempted under the foregoing contribution/indemnification immunity analysis.[11]

## II. UNITED STATES' MOTIONS TO STRIKE PRETTY PRODUCTS' AFFIRMATIVE DEFENSES CONCERNING COUNTS I AND II OF THE COMPLAINT

The government's motion asks this Court to strike the Defendant's affirmative defenses as to both counts of the Complaint.

### STANDARD OF REVIEW

Federal Rules of Civil Procedure 12(f) provides, in part: "Upon motion made by a party ... the court may order stricken from the pleading any insufficient defense." For purposes of this motion, "[a]ll

---

**10.** Derivative liability generally includes only claims for contribution and indemnity. *See, e.g., Cook v. Cook*, 559 F.Supp. 218 (E.D.Pa. 1983) (impleader must be based upon claim for indemnity or contribution from third-party defendant). Courts have uniformly dismissed third-party complaints based upon separate contracts. *See, e.g., United States v. Olavarrieta*, 812 F.2d 640, 643 (11th Cir.1987), *cert. denied*, 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 107 *reh'g denied*, 484 U.S. 1082, 108 S.Ct. 1064, 98 L.Ed.2d 1026 (1987) ("Rule 14(a) does not allow the defendant to assert a separate and independent claim even though the claim arises out of the same general set of facts as the main claim. [The defendant's] third party claim alleging breach of contract [against the putative third-party defendant] is a separate and independent action from the plaintiff's action against him.") (citations omitted); *National Bank of Canada v.*

*Artex Indust., Inc.*, 627 F.Supp. 610 (S.D.N.Y. 1986).

**11.** Preemption only occurs to the extent Pretty Products' claim seeks to shift liability for the clean-up costs from itself to the City, which according to the language of the Complaint, appears to be the entire contract claim. However, to the extent other damages flow from the City's alleged breach of the contract, they are not preempted. Because such claims do not satisfy Rule 14's requirement that they involve derivative liability, i.e., a claim for "all or part of the plaintiff's claim against the third-party plaintiff," and because this Court has previously dismissed all other claims, the breach of contract claim will be dismissed without prejudice. To the extent any damages can be established which are not derivative, and therefore, not preempted by CERCLA, Pretty Products must pursue its claim in state court.

well-pleaded facts are taken as admitted on a motion to strike but conclusions of law or of fact do not have to be treated in that fashion." 5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1380, at 655–56 (1990). Matters outside the pleadings are normally not considered. *Id.*

In general, motions to strike defenses are disfavored:

> Motions to strike a defense as insufficient are not favored by the courts because of their dilatory character. Thus, even when technically appropriate and well-founded, they often are not granted in the absence of a showing of prejudice to the moving party. Nonetheless, they are a useful and appropriate tool when the parties disagree only on the legal implications to be drawn from uncontroverted facts. But even when the defense presents a purely legal question, the courts are very reluctant to determine disputed or substantial issues of law on a motion to strike; these questions quite properly are viewed as determinable only after discovery and a hearing on the merits.

> Nor will a Rule 12(f) motion be granted if there is a substantial question of fact or a mixed question of law and fact that cannot be resolved, even if it is possible to determine the issue by drawing inferences from facts and statements that are not disputed.... In sum, a motion to strike will not be granted if the insufficiency of the defense is not clearly apparent, or if it raises factual issues that should be determined on a hearing on the merits.

*Id.,* § 1381, at 672–78.

■ On the other hand, motions to strike "serve a useful purpose by eliminating insufficient defenses and saving the time and expense which would otherwise be spent in litigating issues which would not affect the outcome of the case." *United States v. Marisol, Inc.,* 725 F.Supp. 833, 836 (M.D.Pa.1989). Still, this Court may only strike those defenses "so legally insuffi-

cient that it is beyond cavil that defendants could not prevail on them." *United States v. Kramer,* 757 F.Supp. 397, 410 (D.N.J. 1991).

## COUNT I AFFIRMATIVE DEFENSES

In Count I, against Pretty Products only, the United States seeks, pursuant to 42 U.S.C. § 9607, the recovery costs incurred and the remaining future costs to be incurred for investigative, removal, and remedial activities in response to the release or threatened release of hazardous substances at the Coshocton City Landfill Site. Pretty Products has asserted fourteen affirmative defenses to Count I, thirteen of which the government seeks to strike in the present motion.[12] The Court will briefly consider each of these in turn.

1. Failure to satisfy the conditions precedent for commencing an action under CERCLA (claim # 2)

■ In the Complaint, Pretty Products did not specify with which statutory or procedural prerequisites the United States had failed to comply. The general allegation in the Complaint that the Plaintiff has failed to comply with unstated conditions precedent provides the Defendant—and this Court—with information of little or no legal value. This Court may dismiss "vague allegations that seek to raise defenses of dubious legal merit" for "indefiniteness." *Donovan v. Robbins,* 99 F.R.D. 593 (N.D.Ill.1983) (citing *United States v. 416.81 Acres of Land,* 514 F.2d 627, 629–32 (7th Cir.1975)). Thus, the United States' motion to strike this affirmative defense is granted.

Alternatively, the Court finds that there are no statutory or procedural prerequisites to bring this CERCLA action. First, pre-suit notice in not applicable to § 9607 liability. *See, e.g., Dedham Water Co. v. Cumberland Farms Dairy, Inc.,* 805 F.2d 1074, 1077–78 (1st Cir.1986) (and cases cited therein); *Kelley v. Thomas Solvent Co.,* 714 F.Supp. 1439, 1447 (W.D.Mich.1989)

---

**12.** Altogether, Pretty Products has asserted 22 defenses to the Complaint. The first defense denies pertinent allegations of the Complaint. Defenses 2 through 15 assert affirmative defenses to Count I. Defenses 16 through 22 assert affirmative defenses to Count II.

("these defenses are inadequate as a matter of law and should be stricken because there are not [sic] procedural prerequisites in CERCLA to commence a cost recovery action and there are no notice requirements applicable to this type of action"). Second, the liability provisions of § 9607 are independent of any other provisions of CERCLA. Thus, prerequisites to a § 9604 suit do not apply to a § 9607 suit. *United States v. Kramer*, 757 F.Supp. 397, 420 (D.N.J.1991). As a result, had this Court not stricken this affirmative defense for "indefiniteness," it would have granted the government's motion to strike under Rule 12(f) as an insufficient defense.

### 2. Lack of causation (claim # 3)

▮ In its next affirmative defense, Pretty Products has asserted that it did not cause, either proximately or actually, any of the problems, conditions, and/or costs alleged in the Complaint. This is merely a denial of what Pretty Products has alleged to be "an integral part of the Government's burden of proof," Defendants' Mem. Contra the Government's Mot. to Strike Aff. Defenses, at 19, and as such, is not technically an affirmative defense.

With respect to the defense of causation, however, the Court holds that causation is irrelevant to a finding of liability under § 9607(a).[13] As stated by the Second Circuit:

> We agree with the State, however, that section 9607(a)(1) unequivocally imposes strict liability on the current owner of a facility from which there is a release or threat of release, without regard to causation.
>
> \* \* \* \* \* \*
>
> Interpreting section 9607(a)(1) as including a causation requirement makes su-

perfluous the affirmative defenses provided in section 9607(b), each of which carves out from liability an exception based on causation.[14]

\* \* \* \* \* \*

We will not interpret section 9607(a) in any way that apparently frustrates the statute's goals, in the absence of a specific congressional intention otherwise.

*New York v. Shore Realty Corp.*, 759 F.2d 1032, 1044–45 (2d Cir.1985). Thus, the government's motion to strike causation from the Complaint as an independent defense is granted.

### 3. Causation due to act of God and/or act or omission of a third party (claim # 4)

To establish a third party defense under § 9607(b)(3), Defendant Pretty Products must demonstrate that:

(1) a third party was the sole cause of the release of hazardous substances;

(2) the third party is not an employee or agent of the defendant;

(3) the acts or omissions of the third party did not occur in connection with a direct or indirect contractual relationship to the third party; and

(4) the defendant exercised due care with respect to the hazardous substances and took precautions against foreseeable acts and omissions of the third party.

42 U.S.C. § 9607(b)(3); *Kelley*, 714 F.Supp. at 1446. The defense asserted by Pretty Products with respect to this section merely states that "[a]ny release or substantial threatened release of a hazardous substance into the environment alleged in the Complaint is or was caused by (a) an act of God, (b) an act or omission of a third party, or (c) a combination of the foregoing." De-

---

**13.** Implicitly, § 9607(b)(3)'s defense relating to an "act or omission of a third party" creates a defense where there is the "complete absence of causation." *United States v. Monsanto Co.*, 858 F.2d 160, 168 (4th Cir.1988), *cert. denied,* 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989). Because Pretty Products has independently asserted a defense under § 9607(b)(3), however, this defense is duplicative, fails to allege the statutory requirements, and will be stricken.

**14.** In other words, if causation is a defense, then there would have been no need for Congress to provide a defense for releases caused by an act of God or war since, without question, any damage caused by an act of God or war could not have been caused by the Defendant, and the statutory language would be mere surplusage.

fendants' Answer, at 8. Thus, with respect to the "third party" portion of the defense, the Defendants have failed to allege requirements 2, 3, and 4, and the government's motion to strike is therefore granted. *See Kelley*, 714 F.Supp. at 1446. However, because the "act of God" defense has no such additional requirements, it will not be stricken.[15]

4. United States' response costs are unnecessary and/or inconsistent with the national contingency plan (claim # 5)

 Under CERCLA, the United States is entitled to recover "all costs of removal or remedial action incurred by the United States ... not inconsistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(A). Any response costs not inconsistent with the national contingency plan ("NCP") are *conclusively* presumed to be reasonable. *United States v. Northeastern Pharmaceutical & Chemical Co.*, 810 F.2d 726, 747 (8th Cir.1986), *cert. denied*, 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987). Thus, the statutory language establishes an exception for costs that are inconsistent with the NCP, and Pretty Products, as the party claiming the benefit of the exception, has "the burden of proving that certain costs are inconsistent with the NCP and, therefore, not recoverable." *Id.* Because Pretty Products carries the burden of establishing inconsistency with the NCP, the affirmative defense is appropriate and the government's motion to strike is denied. However, to the extent Pretty Products seeks to challenge the government's response costs on any grounds *other than its inconsistency with the NCP*, the defense is not legally cognizable and will be stricken. *Accord Kramer*, 757 F.Supp. at 436 ("terms used by defendants in their affirmative defenses such as 'proper' or 'improper,' 'remote,

speculative and contingent,' and 'unreasonable, duplicative and not cost-effective,' do not state an appropriate challenge to the propriety of the government's response costs, and will be stricken.").

5. Estoppel and/or waiver of claim (claim # 6)

Defendant Pretty Products has alleged that the United States is "estopped or has otherwise waived its right to assert its claims, if any, against Defendants." Defendants' Answer, at 8. The United States seeks to have this defense stricken as an unavailable equitable defense.

 While there is clearly a split of authority as to whether equitable defenses are available in a § 9607 action, *see, e.g.*, *United States v. Mottolo*, 695 F.Supp. 615, 626–27 (D.N.H.1988) (equitable defenses available); *Kramer*, 757 F.Supp. at 424–27 (equitable defenses unavailable), this Court finds the *Kramer* reasoning to be most persuasive. First, the language of 42 U.S.C. § 9607(a) is unambiguous: liability is imposed "[n]otwithstanding any other provision or rule of law, and subject *only* to the defenses set forth in subsection (b) of this Section." (emphasis added). Thus, Congress has quite explicitly exercised it undeniable power to curtail the federal courts' traditional discretionary exercise of their equitable powers.[16] As Judge Selya of the First Circuit so eloquently remarked:

> "[i]t is only where the sound of the legislative trumpet is muted or uncertain that judges must interpret—and in interpreting, create. But where the call is a clarion one, the courts have no warrant to rewrite a statute in the guise of 'interpretation.'"

*United States v. Charles George Trucking Co.*, 823 F.2d 685, 689 (1st Cir.1987).

---

**15.** The Defendants' allegation that the release or threatened release "was caused by" an act of God is sufficient to satisfy the statutory requirement that it be the "sole cause."

**16.** As the United States points out, while § 9607 precludes equitable defenses to liability, § 9613(f)(1) (authorizing contribution actions) specifically provides that a court may use appro-

priate equitable factors in allocating liability for response costs. Together, these two sections promote CERCLA's objective that the United States be made whole through recovery of funds from responsible parties, while at the same time assuring that responsible parties—in the absence of a settlement—do not assume more than their equitable share of costs.

■ Second, as a general proposition, equitable defenses "cannot be asserted against the government when it acts in its sovereign capacity to protect the public health and safety." *United States v. Stringfellow,* 661 F.Supp. 1053, 1062 (C.D.Cal.1987) (citing *Chesapeake & Delaware Canal Co. v. United States,* 250 U.S. 123, 125, 39 S.Ct. 407, 408, 63 L.Ed. 889 (1919)). Thus, the government's motion to strike the estoppel/waiver defense is granted.

6. United States' actions are inconsistent with EPA guidelines, policies, rules and regulations, and/or because such guidelines, policies, rules and regulations are unconstitutional and/or unlawful as applied to this case (claim # 7)

In its table summarizing the substance of each affirmative defense and its alleged deficiency, United States' Mot. to Strike Pretty Products' Affirmative Defenses Concerning Count I of the Complaint, at 4, the government argues that Pretty Products' seventh defense is deficient in that it is "not available for review by this Court" and "vague." However, the United States—either intentionally or through oversight—has failed to explain its assertion or advance any arguments in support of its position. Likewise, Pretty Products has only summarily responded to the United States' summary arguments. Defs' Mem. Contra the Government's Mot. to Strike Affirmative Defenses, at 29 n. 2. Without a more substantial explication of the issues involved in this affirmative defense, the motion to strike is denied.

7. Failure to join necessary parties (claim # 8)

■ It is well-established that, where the harm is indivisible, CERCLA envisions joint and several liability for responsible parties. *Kelley,* 714 F.Supp. at 1448. Thus, the government is not required to sue and join all potentially liable parties.

*Kramer,* 757 F.Supp. at 423 (and cases cited therein). Rather, a party held liable to the government for response costs must seek contribution from other responsible parties to the extent it has paid more than its equitable share of the response costs. 42 U.S.C. § 9613(f). Thus, the United States' motion to strike the joinder defense is granted.

8. Selective prosecution under CERCLA violates constitutional rights (claim # 9)

Pretty Products alleges in its ninth defense that the United States' "selective prosecution of Defendants under CERCLA contravenes Defendants' respective constitutional rights, and is therefore barred." Defendants' Answer, at 9.

■ To establish a claim for selective prosecution or enforcement of a statute,[17] a claimant must establish a violation of ordinary equal protection standards. *Wayte v. United States,* 470 U.S. 598, 608, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1984). In *Kramer,* the defendants alleged that the EPA's policy of treating commercial and industrial producers of hazardous substances differently from municipalities violated their equal protection rights. The district court concluded:

> We find that the alleged policy is consistent with EPA's broad discretion to select PRPs to recover its response costs, and rationally related to the statute's purpose of efficient and rapid reimbursement of the Superfund. The policy does not violate defendants' rights to equal protection, and we will therefore strike those affirmative defenses based on that policy.

757 F.Supp. at 435. To the extent Pretty Products is alleging the EPA has treated the City of Coshocton differently from the way it has treated Pretty Products, the Court finds the *Kramer* reasoning to be persuasive and it will, therefore, be adopted. To the extent Pretty Products is

---

**17.** The Court will assume without deciding that a claim of selective prosecution is maintainable outside the context of a criminal prosecution, *see, e.g., United States v. City of Fort Pierre, S.D.,* 580 F.Supp. 1036, 1041 (D.S.D.1983), *rev'd on other grounds,* 747 F.2d 464 (8th Cir.1984), and specifically, that a claim is maintainable in a cost recovery action under CERCLA.

alleging the EPA has treated Pretty Products differently from the way it has treated other PRPs,[18] the Court finds the alleged disparity in treatment to be rationally related to legitimate governmental interests, i.e., the quick and inexpensive cleanup of hazardous waste sites. Furthermore, to the extent Pretty Products has been treated differently, the statute provides an important equalization device: a right to contribution from other responsible, non-settling parties. The motion to strike the selective prosecution affirmative defense is granted.

9. United States has failed to properly mitigate its response costs and other damages (claim # 10)

 This Court's decision with respect to the Defendants' fifth defense is controlling here. CERCLA contains no provision requiring the government to "mitigate" its response costs. *Kelley*, 714 F.Supp. at 1451 ("In keeping with the broad and independent liability scheme inherent in § 107 of this Act, 42 U.S.C. § 9607, the Court concludes that because § 107 imposes no duty upon the United States to mitigate costs, this defense is insufficient as a matter of law and will be stricken."). Rather, all response costs are recoverable to the extent they are consistent with the national contingency plan. *Kramer*, 757 F.Supp. at 436 ("the only criterion for the recovery of response costs under CERCLA is whether costs are consistent with the National Contingency Plan"). Thus, the United States' motion to strike the failure to mitigate defense is granted.

10. Exercise of due care, reasonableness, good faith, and compliance with applicable law (claim # 11)

 The above analysis with respect to the equitable defenses is controlling here. None of these claims—even if proven at trial—constitutes a defense to a § 9607 action. As such, the United States' motion to strike is granted.

11. Inconsistency with relief sought in *United States v. City of Coshocton* (claim # 12)

 As previously stated, this Court entered a Consent Decree on July 22, 1991, in the above-styled case which provides that the eight signatories to the Decree shall pay two-thirds of the response costs incurred at the Coshocton site. Thereafter, the United States filed the instant action to recover the remaining response costs. Given the structure of CERCLA, including its joint and several liability and settlement/contribution provisions, the relief sought in the instant case is manifestly consistent with the Consent Decree. Indeed, in the 1986 SARA amendments, Congress specifically provided for successive cost recovery actions. 42 U.S.C. § 9613(f)(2). Furthermore, to avoid any incompatibility, CERCLA provides that any settlement with the United States reduces the potential liability of the non-settling parties by the amount of the settlement. *Id.* Thus, in this limited sense, the Consent Decree is relevant to the amount of liability sought in the instant action. However, the attempt to hold Pretty Products liable for the remaining response costs is consistent with CERCLA and certainly not incompatible with the terms of the Consent Decree. Because Pretty Products has not yet reimbursed the government for its response costs, and because the government may only seek to be reimbursed for that portion of its response costs not covered by the Consent Decree, there is no—and indeed, can be no—inconsistency between the relief sought in this action and the Consent Decree, and the motion to strike is therefore granted.

12. Duty to negotiate in good faith (claim # 13)

 Pretty Products asserts in its next affirmative defense that the government has breached its "duty" under CERCLA to negotiate in good faith with the Defendants. In support of this alleged duty, it

---

**18.** The Court does not mean to imply that any disparity in treatment actually exists. To the contrary, the Defendants were given an opportunity to participate in the negotiations preceding the settlement, and voluntarily chose to withdraw from those negotiations.

cites to *United States v. Cannons Eng'g Corp.*, 899 F.2d 79 (1st Cir.1990). However, nowhere did the *Cannons Eng'g* court suggest that the government has such a duty, and nowhere did it suggest that a lack of good faith can serve as a defense to a § 9607 action. Rather, the court was merely considering whether to affirm the district court's approval of a consent decree, and the fact that the government had conducted negotiations "forthrightly and in good faith" was merely one of many considerations relevant to the issue of the fairness of the procedure employed in reaching agreement on the proposed consent decree. *Id.* it 86. Given this Court's above analysis with respect to the unavailability of any defenses other than those enumerated in § 9607, and the fact that no other federal court has apparently allowed a good faith defense in a § 9607 action, the motion to strike is granted.

13. Defendants' liability is limited to Pretty Products' "fair share" of responsibility (claim # 14)

The Court finds this defense to be without any legal merit for all the reasons previously enumerated. The motion to strike is granted.

14. Defendants' liability is limited to unrecovered response costs or Defendants' respective share of responsibility on a comparative fault basis (claim # 15)

 In this affirmative defense, Pretty Products states:

Defendants' liabilities, if any, under CERCLA are limited to the lesser of: (1) the amount of response costs, both present and future, which Plaintiff and/or U.S. EPA have not already recovered in settlement from other potentially responsible parties; or (2) amounts corresponding to Defendants' respective shares of responsibility for hazardous substances at the Coshocton Landfill, as determined on a comparative fault basis, consistent with the Uniform Comparative Fault Act.

Defendants' Answer, at 10–11. The first proposition is a correct statement of law, while the second is not. Comparative fault has no place in a § 9607 suit, although it certainly may be relevant in a suit for contribution under § 9613. Thus, to the extent this affirmative defense purports to limit the Defendants' liability to the lesser of the two standards, the United States' motion to strike is granted; to the extent it seeks to reduce the United States' recovery in this action by the amount of the recovery in the Consent Decree, the United States' motion to strike is denied.

## COUNT II AFFIRMATIVE DEFENSES

In Count II of the Complaint, the United States seeks civil penalties and injunctive relief for both Pretty Products' and Lancaster Colony Corporation's refusal to supply certain requested information pursuant to 42 U.S.C. § 9604. The Defendants have asserted seven affirmative defenses to Count II of the Complaint. The government has moved this Court to strike each of these defenses.

Section 9604 of CERCLA provides the statutory authority for EPA's information and document request:

Any officer, employee, or representative [of the President, duly designated by the President], may require any person who has or may have information relevant to any of the following to furnish, upon reasonable notice, information or documents relating to such matter:

(A) The identification, nature, and quantity of materials which have been or are generated, treated, stored, or disposed of at a vessel or facility or transported to a vessel or facility.

(B) The nature or extent of a release or threatened release of a hazardous substance or pollutant or contaminant at or from a vessel or facility.

(C) Information relating to the ability of a person to pay for or to perform a cleanup.

42 U.S.C. § 9604(e)(2). Failure to comply with an information and document request from the EPA may result in an injunction directing compliance and/or a civil penalty

not to exceed $25,000 for each day of unreasonable noncompliance. 42 U.S.C. § 9604(e)(5)(B). However, this Court may not order such relief where "the demand for information or documents is arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* Whether an EPA information and document request is in accordance with law is determined in reference to § 9604(e)(2)(A)–(C).

1. The EPA's information requests are vague, overbroad, and outside the EPA's statutory authority (claim # 16)

This affirmative defense, liberally interpreted, appropriately alleges that the EPA's requests for information and documents are not in accordance with law, or otherwise arbitrary and capricious. If proven, the defense would defeat EPA's request for an injunction and/or civil penalties. The government's motion to strike is denied.

2. The EPA is estopped because of its own inequitable conduct (claim # 17)

 Both parties vigorously dispute whether the equitable defense of estoppel may be asserted against the government in a § 9604 action. Unlike § 107 of CERCLA, § 9604 provides no specific limitation respecting the availability of specific defenses.

 While there is a dearth of decisional law on the question of the availability of an estoppel defense in a § 104 action, this Court is convinced that such a defense may be available, but only with respect to a request for a civil penalty. To the extent that the EPA's conduct has induced noncompliance with a request for information or documents, the public interest requires that the EPA still be able to receive the information and documents,[19] but that it lose the ability to seek the imposition of a civil penalty on the non-complying party. This result is mandated by the fact that the "detriment" or "injustice" required for an estoppel defense[20] would necessarily be absent where a party merely failed to comply with an EPA request but was then later ordered to comply; in such a situation, the non-complying party has in effect been given an extension of time in which to comply with the EPA's request, and no detriment is present. Detriment may, however, be present where the non-complying party is subject to a substantial monetary penalty. Furthermore, the public interest in full disclosure of corporate environmental and/or financial information necessarily outweighs the interest in ensuring that our government deal fairly, honestly and consistently with its citizens.[21] Thus, the United States' motion is granted to the extent it applies to the claim for injunctive relief, and denied to the extent it applies to the claim for the imposition of civil penalties.

3. United States has breached its duty of good faith and fair dealing (claim # 18)

Like the equitable estoppel defense, the Court finds this equitable defense to be partially impertinent. To the extent it ap-

**19.** This assumes that the EPA's request for information and documents is within its statutory authority.

**20.** To establish an equitable estoppel defense, a claimant must establish that: (1) the party to be estopped knows the facts; (2) he must intend that his conduct be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury. *United States v. Georgia–Pacific Co.,* 421 F.2d 92, 96 (9th Cir.1970) (quoting *Hampton v. Paramount Pictures Corp.,* 279 F.2d 100, 104 (9th Cir.1960)).

**21.** This is not to say that this interest is not important; it is to say that the interest would be only slightly advanced by a refusal to enjoin compliance with a proper EPA information and document request, especially considering that the decision in this case refuses to allow an estoppel defense *only* in an action for injunctive relief, not in an action for a civil penalty. Thus, the public interest in the quick and inexpensive cleanup of our environment is protected by the availability of injunctive relief without an estoppel defense in an action to enjoin a party's interference with an EPA information or document request, while the public interest in ensuring governmental fair play is protected by the allowance of an estoppel defense in a civil penalty action.

plies to the claim for injunctive relief, it is inappropriate, detrimental to the public interest, contrary to CERCLA's remedial scheme, and will be stricken; to the extent it applies to the claim for civil penalties, the United States' motion to strike is denied.

4. Defendants' failure to comply with the EPA's information requests is not unreasonable under the circumstances (claim # 19)

In its Complaint, EPA has requested the imposition of a civil penalty for the Defendants' failure to fully comply with the EPA's information and document requests. As expressed above, civil penalties may be imposed on any person who "unreasonably fails to comply" with a proper EPA information request. 42 U.S.C. § 9604(e)(5)(B). Thus, the defense is proper to the extent it applies to the request for the imposition of a civil penalty. The United States' motion to strike is denied.

5. Defendants' liability for civil penalties is tolled by virtue of their reasonable, good faith objections to EPA's information requests and their reasonable belief that EPA had agreed to accept as complete the information they provided (claim # 20)

This affirmative defense, which on its face only applies to the request for civil penalties, is in substance a restatement of the estoppel defense (claim # 17) and the reasonableness defense (claim # 19). Although perhaps somewhat redundant, the affirmative defense will not be stricken since, if proven, it would arguably extinguish the Defendants' liability for civil penalties. The government's motion to strike is denied.

6. Lancaster Colony is not liable for the CERCLA liability of Pretty Products (claim # 21)

Both parties agree that in some limited circumstances, parent corporations have

been held liable for the CERCLA liability of subsidiaries. The defense is therefore appropriate. The government's motion to strike is denied.[22]

7. As a matter of law, EPA is not entitled to the damages, response costs, declaratory judgment, injunction, order, penalties, and/or other relief prayed for in the Complaint (claim # 22)

In this defense, the Defendants have completely failed to provide the EPA and this Court with a reasonably specific statement of an affirmative defense. As such, it fails to provide EPA with proper notice of the claim and will therefore be stricken as unduly vague. The government's motion to strike is granted.

### III. UNITED STATES' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF LIABILITY UNDER 42 U.S.C. § 9604(e)(5)(B)(ii)

The government seeks to have this Court determine that the Defendants are liable for violating Section 104(e) of CERCLA, 42 U.S.C. § 9604(e), by their failure to fully and timely respond to EPA's information and document requests.

### STANDARD OF REVIEW

Summary judgment is appropriate only in a limited number of circumstances. Rule 56(c) of the Federal Rules of Civil Procedure provides, in pertinent part, that summary judgment shall be granted only:

if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The moving party bears the burden of establishing the absence of a genuine issue as to any material fact. *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 157, 90

---

**22.** Parent corporations have been held liable for the response costs attributable to subsidiaries. This Court will decide whether a substantial information and document request may be directed to a parent corporation under § 9604 when it considers the government's motion for partial summary judgment.

S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The Supreme Court has held that the standard of summary judgment "mirrors the standard for a directed verdict under Federal Rules of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). This is true where, for instance, the dispute turns only on a legal question and the moving party must prevail as a matter of law even if the court were to resolve all factual disputes in favor of the non-moving party. *See Ross v. Franzen*, 777 F.2d 1216, 1222 (7th Cir.1985); 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2725, at 79 (2d ed. 1983).

In addition, a summary judgment motion requires special treatment of the record. The Court "must view the evidence presented through the prism of the substantive evidentiary burden" and determine "whether reasonable jurors could find by a preponderance of the evidence that the Plaintiff is entitled to a verdict ..." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Nonetheless, in making this determination the Court may not impinge upon the proper function of the jury. Therefore, all of "[t]he evidence of the non-movant party is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

### DISCUSSION

■ The authority granted to the EPA under § 9604(e)(2) to seek information and documents is among the mechanisms available to help the EPA identify PRPs and gain information about hazardous waste sites in order to facilitate protection of human health and the environment. Section 104(e)(5)(B) of CERCLA, as amended by SARA, authorizes the United States "to commence a civil action to compel compliance with a request" for information and documents pursuant to Section 104(e). An EPA request for information and documents will be enforced by a district court where: (1) the investigation is within EPA's authority; (2) the request is not too indefinite; and (3) the information requested is relevant to legislative purposes. *United States v. Crown Roll Leaf, Inc.*, 19 Envt'l L.Rep. 20262, 20264, 1988 WL 160044 (D.N.J.1988).[23] Specifically, the EPA is entitled to information relating to any of the following:

(A) the identification, nature, and quantity of materials which have been or are generated, treated, stored, or disposed of at a vessel, or facility or transported to a vessel or facility.

(B) The nature or extent of a release or threatened release of a hazardous substance or pollutant or contaminant at or from a vessel or facility.

(C) Information relating to the ability of a person to pay for or perform a cleanup.

42 U.S.C. § 9604(e)(2).

■ In the case *sub judice* the real dispute centers on the authority of EPA to request information from a parent corporation respecting its relationship to—and ability to pay for—the CERCLA liability of a subsidiary corporation. While the authority of EPA to request this information would clearly have been lacking before the 1986 SARA amendments, it is the opinion of this Court that such information relates to "the ability of a person to pay for or perform a cleanup" and is therefore authorized by the unambiguous language of CERCLA.

■ Both parties agree that parent corporations have, in various circumstances, been found liable for a subsidiary corpora-

---

**23.** The actual statutory language states that "the court shall direct compliance with the [information] requests ... to provide such information or documents unless under the circumstances of the case the demand for information or documents is arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." 42 U.S.C. § 9604(e)(5)(B)(ii).

tion's CERCLA liability.[24] Thus, the language of CERCLA authorizing the EPA to obtain information relating to the "ability of a person to pay for or perform a clean-up" must necessarily encompass not only financial information from a parent corporation—since the parent may be called upon to assume the subsidiary's liability—but also information relevant to the relationship between the parent and subsidiary—since the nature of that relationship is relevant to the possible direct or indirect liability of the parent for the subsidiary's CERCLA liability. Given the remedial nature of CERCLA, this Court is convinced that Congress intended such a broad reading of its grant of authority to the EPA, especially in light of the SARA amendments.

 In effect, the Defendants are seeking to impose restrictions on the EPA's ability to request information that simply do not exist. For instance, as a parent corporation, Lancaster is potentially responsible for the CERCLA liability of Pretty Products. As such, the EPA need not establish the financial inability of Pretty Products to cover its possible liability before it may seek information from Lancaster. Rather, the EPA may reasonably conduct its *investigation* of all potentially responsible parties simultaneously, rather than through a step-by-step process. Furthermore, the Defendants may not decide for the EPA when they have provided sufficient information. If the EPA requests two different documents that contain the same information, the Defendants cannot

simply provide the EPA with one document and consider itself to be in "substantial compliance" with the EPA request. Short of a patently burdensome request that is arbitrary, capricious, or an abuse of discretion, this Court will not second guess the investigatory judgment of the EPA.

Given these considerations, the Court is convinced that the United States has established a violation of 42 U.S.C. 9604(e), and therefore, pursuant to § 9604(e)(5)(B), the Court hereby directs the Defendants to comply fully with the information and document requests tendered by the EPA, including full compliance with the request for information relating to the financial status of Lancaster and the relationship between Lancaster and Pretty Products.[25]

WHEREUPON, upon consideration and being duly advised, the Court finds the City of Coshocton's motion to dismiss the Third–Party Complaint to be meritorious, and it is, therefore, GRANTED. All claims are dismissed with prejudice, with the exception of the contract claim, which is partially dismissed without prejudice.

Furthermore, the Court finds the United States' motion to strike Defendants' affirmative defenses 2, 3, 6, 7, 8, 9, 10, 11, 12, 13, 14, and 22 to be meritorious and it is, therefore, GRANTED.[26] The motion to strike affirmative defenses 4, 5, 15, 17, and 18 is partially meritorious and it is, therefore, GRANTED IN PART AND DENIED IN PART. The motion to strike affirmative defenses 7, 16, 19, 20, and 21 is DENIED.

---

**24.** Some courts use the traditional "alter ego" doctrine under which the "corporate veil" must be pierced before liability may be imposed on a parent corporation. *See, e.g., Joslyn Manufacturing Co. v. T.L. James & Co.,* 893 F.2d 80 (5th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1017, 112 L.Ed.2d 1098 (1991). Other federal courts have used an expanded "control test" to determine liability. *See, e.g., United States v. Kayser–Roth Corp.,* 724 F.Supp. 15 (D.R.I.1989), *aff'd,* 910 F.2d 24 (1st Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 957, 112 L.Ed.2d 1045 (1991).

**25.** While the United States has only moved for summary judgment on the issue of liability, and has not moved for the imposition of a civil penalty at this time, the Court wishes to note

that based upon the record before it at this time, it would be unwilling to find the unreasonable compliance necessary to support the imposition of a civil penalty against the Defendants. However, in the unlikely event the government wishes to move for such a penalty at a later date, the Court will consider the motion more fully at that time. Of course, the Defendants' non-compliance with this Order may alter the Court's opinion as to the reasonableness of its non-compliance with the EPA's initial request.

**26.** The numbers in this paragraph refer to Defendants' own claim numbers. For example, the number "2" refers to Defendants' claim number two, although it is actually Defendants' first affirmative defense.

Finally, the United States' motion for summary judgment on the issue of liability under 42 U.S.C. § 9604(e) is GRANTED. The Defendants are hereby directed to comply fully with EPA's information and document requests within 30 days of the entry of this Order.

IT IS SO ORDERED.